817 So.2d 1239 (2002)
James PENDER, et al.
v.
NATCHITOCHES PARISH HOSPITAL.
No. 01-1380.
Court of Appeal of Louisiana, Third Circuit.
May 15, 2002.
Rehearing Denied June 26, 2002.
René J. Pfefferle, Watson, Blanche, Wilson & Posner, Baton Rouge, LA, for Defendant/Appellant Natchitoches Parish Hospital.
Edwin Dunahoe, Thomas, Dunahoe & Thomas, Natchitoches, LA, Hodge O'Neal, III, O'Neal Law Offices, Monroe, LA, for Plaintiffs/Appellees James Pender, et al.
*1240 Court composed of ULYSSES GENE THIBODEAUX, OSWALD A. DECUIR, and ELIZABETH A. PICKETT, Judges.
THIBODEAUX, Judge.
This case arises out of the injury and subsequent death of nursing home resident, Mrs. Edna Pender. Plaintiffs, her children, filed two petitions in connection with this matter, the first of which alleged negligence on the part of the defendant, Natchitoches Parish Hospital, and requested review of the matter by a medical review panel pursuant to La.R.S. 40:1299.47(B)(1)(a)(i). The second petition alleged the same facts and circumstances as set out in the first and asserted a violation of the Nursing Home Residents' Bill of Rights, La.R.S. 40:2010.8. In response to the second petition, the Hospital filed exceptions of prematurity and of no right of action for failure to submit the matter to a medical review panel. We affirm the trial court's denial of the Hospital's exceptions.

I.

ISSUE
The sole issue for review is whether the plaintiffs' claim that the Hospital violated the Nursing Home Residents' Bill of Rights, as set out in La.R.S. 40:2010.8, is subject to the Louisiana Medical Malpractice Act such that the claim must first be presented to a medical review panel under La.R.S. 40:1299.47(B)(1)(a)(i).

II.

FACTS AND PROCEDURAL HISTORY
On July 28, 2000, Mrs. Edna Pender was admitted as a patient to the Natchitoches Parish Hospital Long Term Care Unit (hereinafter "Hospital"), a nursing home facility, for general care and treatment. Plaintiffs James Pender, Vivian Darlene Tims, Sonja Faye Welch, Jessie Strebeck, and Vicki Feazell are the children of Mrs. Pender. They allege that on August 28, 2000, Mrs. Pender was left alone and unrestrained in her wheelchair at the Hospital. She fell from the wheelchair, struck her head on the floor, and fractured her skull. Mrs. Pender was then transported to Schumpert Medical Center in Shreveport, where she died that same day.
Plaintiffs filed two petitions against the Hospital. On March 1, 2001, they filed a "Petition to Impanel Medical Malpractice Review Panel" with the Patient's Compensation Fund Oversight Board against the Hospital in its capacity as a qualified health care provider. The plaintiffs allege that prior to the time of her admission, Mrs. Pender had physical problems including challenges with balance, a history of falling, a history of mental confusion, and residual left-sided weakness. They submit that these ailments were brought to the attention of the Hospital staff and that, in addition, the Hospital performed further evaluations and assessments of its patient. The need for adequate restraints and precautions was allegedly reiterated by the plaintiffs to the Hospital. They contend that the death of Mrs. Pender was caused by the negligent and inappropriate treatment rendered by the Hospital, including its alleged failure to properly attend, restrain, supervise, and monitor Mrs. Pender, and leaving her in an unrestrained and unattended position with knowledge of her propensity to fall. In this petition, the plaintiffs requested the impaneling of a medical malpractice review panel.
On March 22, 2001, the same plaintiffs filed a second petition against the Hospital, in its capacity as the operator of the Natchitoches Parish Long Term Care Unit. This petition was entitled "Petition to Enforce Rights Under Residents' Bill of Rights (La.R.S. 40:2010, et seq.)," and alleges the same facts and circumstances as set out in the petition dated March 1, 2001. *1241 In this petition, however, plaintiffs do not request a medical review panel, nor do they allege specific acts of negligence. Rather, the petition alleges that the death of Mrs. Pender was caused by the violation of the terms, conditions, and provisions of La.R.S. 40:2010.8, and that the action is brought pursuant to La.R.S. 40:2010.9. The plaintiffs also allege that their damages include the wrongful death of their mother, as well as her pain and suffering.
On April 24, 2001, the Hospital filed a dilatory exception, claiming status as a qualified health care provider within the meaning of the Medical Malpractice Act, La.R.S. 40:1299.41 et seq., and that it was therefore entitled to avail itself of La.R.S. 40:1299.47(B)(1)(a)(i), requiring the submission of the alleged claims to a medical review panel. Since the claim was not presented to a panel, the Hospital claimed prematurity and, alternatively, that the plaintiffs' petition states no right or cause of action. The trial court denied these exceptions. The Hospital appealed the district court's judgment.

III.

LAW AND DISCUSSION
We note at the outset that the trial court's decision upon which this appeal is based is not a final judgment. The Hospital is therefore required to show cause why its appeal should not be dismissed as a non-appealable interlocutory judgment.
As set out in La.R.S. 40:1299.47(B)(1)(a)(i), "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." This requirement is a constitutionally reasonable restriction to court access. In theory, it encourages settlement, minimizes frivolous claims, reduces litigation costs and awards, and helps guarantee reasonably priced health care. Everett v. Goldman, 359 So.2d 1256 (La.1978); Sonnier v. Opelousas Gen. Hosp., 95-1560 (La. App. 3 Cir. 5/8/96); 688 So.2d 1040. We find, as did the court in Sonnier, that requiring the Hospital to forego the benefits of the submission of this claim to a medical review panel would cause irreparable injury per La.Code Civ.P. art. 2083(A).[1] The trial court's interlocutory judgment dismissing the Hospital's exceptions is therefore properly appealable.
The Nursing Home Residents' Bill of Rights and its complementary statutes were enacted in 1985, primarily to require all nursing homes to adopt and make public a statement of the rights and responsibilities of its residents and to treat those residents in accordance with that statement. La.R.S. 40:2010.8. The statute requires that the statement contain twenty-two different assurances of residents' rights. Id. If any of those rights are violated, then a cause of action arises against any nursing home or health care facility responsible for the violation. La. R.S. 40:2010.9. This cause of action is heritable. Gibson v. Monroe Manor Nursing Home, 32,806 (La.App. 2 Cir. 3/3/00); 756 So.2d 583; Short v. Plantation Management Corp., 99-0899 (La.App. 1 Cir. 12/27/00); 781 So.2d 46. The legislative intent behind this series of statutes is found at La.R.S.2010.6, which reads in full:
The legislature finds that persons residing within nursing homes are isolated from the community and often lack the *1242 means to assert their rights as individual citizens. The legislature further recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and some personal freedom. It is therefore the intent of the legislature to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing home residents' right to self-determination. It is further the intent that the provisions of R.S. 40:2010.6 through R.S. 40:2010.9 complement and not duplicate or substitute for other survey and inspection programs regarding nursing homes.
The Medical Malpractice Act applies to claims against health care providers. In La.R.S. 40:1299.41(A)(1), the definition of "heath care provider" includes a "hospital." And "[w]hile nursing homes are not mentioned in § 1299.41(A)(1), the statute does go on to state [in La.R.S. 40:1299.41(A)(4)] that the word `hospital' means any hospital defined in R.S. 40:2102; [and] any `nursing home' or `home' as defined in R.S. 40:2009.2...." Petre v. Living Centers-East, Inc., 935 F.Supp. 808, 814 (E.D.La. 1996). A nursing home can therefore be considered a health care provider and can, in certain circumstances, be subject to the procedural devices set forth in the Medical Malpractice Act, including review by a medical review panel. However, in certain other circumstances, as here, a nursing home will not be subject to the Act.
The Hospital's arguments are compelling. It suggests that the plaintiffs' allegations against the nursing home are essentially allegations of medical malpractice, and fall squarely within the definition of medical "malpractice," defined in the Act as "any unintentional tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient...." La.R.S. 40:1299.41(A)(8). The Hospital supports its arguments by urging that "[a] plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one when the statute requires a procedure if the claim fits within its definition." Dominick v. Rehabilitation Hosp. of New Orleans, 97-2310, p. 3 (La. App. 4 Cir. 4/15/98); 714 So.2d 739, 741 (quoting Cashio v. Baton Rouge Gen. Hosp., 378 So.2d 182, 184 (La.App. 1 Cir. 1979)). The Hospital points out further "that any conduct complained of should be handled under the procedure of the [Medical Malpractice] Act if it can be reasonably said that it comes within the definitions of the Act even though there may be alternative theories for liability." Wyble v. St. Luke Gen. Hosp., 415 So.2d 622, 624 (La. App. 3 Cir.1982) (quoting Cashio, 378 So.2d at 185). See also Sonnier, 688 So.2d 1040.
Strict adherence, however, to the jurisprudential rules urged by the Hospital and imposition of the procedures of the Medical Malpractice Act upon a claim alleging violations of the Residents' Bill of Rights would completely ignore the clear language of La.R.S. 40:2010.9, which addresses the civil enforcement of the Residents' Bill of Rights. It reads as follows:
A. Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction *1243 to enforce such rights and to recover actual damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees, costs of the action, and damages, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.
B. The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies.
(Emphasis added). By the clear language of the Residents' Bill of Rights statutes, the remedies for alleged violations thereof, as secured by the March 22, 2001 petition, are "in addition to and cumulative with" those allowed under the Medical Malpractice Act.
We, therefore, hold that La.R.S. 40:2010.6 et seq. is substantive and not procedural in nature. It creates a cause of action for violations of nursing home residents' rights, the enforcement of which does not require adherence to the procedures of the Medical Malpractice Act, particularly the requirement that the matter be submitted to a medical review panel before the action may be commenced. In our estimation, the theory of recovery under La.R.S. 40:2010.6 et seq. is separate and distinct from the theories of recovery traditionally thought to comprise a medical malpractice action.
Though the language of La.R.S. 40:2010.9 is clear and conclusive, our decision is based on additional grounds. First, remedies for violations of the Residents' Bill of Rights are not considered duplicative of a regular tort claim. Schenck v. Living Centers-East, Inc., 917 F.Supp. 432 (E.D.La.1996); Petre, 935 F.Supp. 808; Gibson, 756 So.2d 583. They are, therefore, unique and they stand alone. Second, because the Residents' Bill of Rights statute is narrower and more focused than the Medical Malpractice Act, the "statute more specifically directed to the matter at issue must prevail as an exception to a statute more general in character." Esteve v. Allstate Ins. Co., 351 So.2d 117, 121 (La.1977). The Residents' Bill of Rights supplements, but does not supplant, the Medical Malpractice Act, and the provisions in question simply do not contain a requirement for submission of the matter to a medical review panel. Third, the substance of the petition dated March 22, 2001 is neither rooted in malpractice, nor does it allege specific acts of negligence on the part of the Hospital. Fourth, as the Second Circuit stated in dicta, "an action arising under the Nursing Home Bill of Rights may be brought in a district court without a requirement of submission to a medical review panel." Gorham v. HCA Health Services of Louisiana, 34,721, p. 3 (La. App. 2 Cir. 5/17/01); 786 So.2d 348, 350. Finally, and perhaps most importantly, our decision comports with Coleman v. Deno, XXXX-XXXX (La.1/25/02); 813 So.2d 303, where our supreme court found that the appellate court erred in recognizing an intentional tort of "patient dumping" against the defendant-doctor for improper transfer of the patient. Rather, the court held, the action stemming from the amputation of the plaintiff-patient's arm was a "malpractice" claim within the scope of the Medical Malpractice Act.
The court in Coleman set out six factors for determining whether certain conduct by a qualified health care provider constitutes "malpractice" under the Act. The Act will typically govern if (1) the wrong is treatment related or is caused by a dereliction of professional skill; (2) expert medical *1244 evidence is required to determine whether the appropriate standard of care was breached; (3) the pertinent act or omission involved an assessment of the patient's condition; (4) the incident occurred in the context of a physician-patient relationship or was within the scope of activities which a hospital is licensed to perform; (5) the injury occurred because the patient sought treatment; and (6) the tort alleged was unintentional.
In applying the first two factors, we conclude that while Mrs. Pender was at the nursing home for general care and treatment, falling from her wheelchair was not related to any specific treatment, nor does it represent a complete abandonment of the staffs professional skill. Moreover, the determination of breach of the appropriate standard of care may likely be provided by a nursing home administrator, or some other non-medical expert. Factors three and four also militate in favor of the plaintiffs' position. The absence of a safety device from the person of Mrs. Pender or from her wheelchair did not involve an assessment of her condition. And though Mrs. Pender's protection against falling was within the scope of the nursing home's duty, the falling incident did not occur in the context of a physicianpatient relationship, nor was the falling incident within the scope of activities which the nursing home was licensed to perform. Similarly, the fifth factor is not met with any certainty. It is difficult to say whether Mrs. Pender's injury can rightfully be linked with her treatment, since though she sought general treatment at the nursing home, she was not being specifically treated for anything when the accident occurred. As far as the sixth factor is concerned, we are confident that the act was unintentional. However, because this last factor is the only one that we certainly believe is met, we must conclude that based on the totality of the evidence and on the plaintiffs' petition, their claims of March 22, 2001 do not fall within the confines of the Medical Malpractice Act, and are therefore not governed by its procedural devices.
Our holding does not mean that the Medical Malpractice Act is altogether inapplicable to nursing homes. Surely, a petitioner whose claim against a nursing home is grounded in one of the twenty plus rights contained in La.R.S. 40:2010.8 has a cause of action under the Residents' Bill of Rights. A petitioner whose claim against a nursing home is not based on a violation of at least one of the rights contained in La.R.S. 40:2010.8, but which still falls within the purview of the Medical Malpractice Act, may still proceed under the Act.

IV.

CONCLUSION
For the reasons assigned, the trial court judgment appealed from is affirmed insofar as it denies the Hospital's exception of prematurity and its alternative exception of no cause of action.
All costs of this appeal are assessed to Natchitoches Parish Hospital.
AFFIRMED.
PICKETT, J., CONCURS IN THE RESULT.
DECUIR, J., DISSENTS AND ASSIGNS WRITTEN REASONS.
DECUIR, J., dissenting.
In affirming the judgment of the trial court, I believe the majority mischaracterizes the nature of the plaintiffs' Nursing Home Bill of Rights claim. The cause of action is alleged to be a separate and distinct cause of action from that brought pursuant to the Medical Malpractice Act. However, the majority notes that the same facts and circumstances are alleged in both petitions. While it is certainly true that *1245 the Nursing Home Bill of Rights may afford these plaintiffs with a remedy that is "in addition to and cumulative with other legal remedies," as provided in the statute, it is indisputable that the petition alleges an unintentional tort which is encompassed in the definition of "malpractice," at La. R.S. 40:1299.41(8):
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, ...
Under the Medical Malpractice Act and pertinent jurisprudence, the plaintiffs' claims for negligence against the nursing home, based on health care or professional services rendered and whether brought under the malpractice act or the nursing home statute, must be reviewed by a medical review panel prior to suit. See Richard v. Louisiana Extended Care Centers, Inc., 01-1492 (La.App. 3 Cir. 3/6/02), 809 So.2d 1248; Gorham v. HCA Health Services of La., 34,721 (La.App. 2 Cir. 5/17/01), 786 So.2d 348. There are, of course, many claims that a person could assert under the Nursing Home Patients' Bill of Rights that would not be characterized as malpractice and would, therefore, not be subject to medical review panel proceedings. For instance, a nursing home patient may bring a claim for the violation of his right to civil and religious liberties, his right to be treated with dignity, or even his right to "retire and rise in accordance with his reasonable requests." La.R.S. 40:2010.8(1),(9), and (21). This is not such an instance.
The majority's analysis of the nature of the cause of action under Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, is misplaced. Coleman was essentially a fact review, subsequent to a full trial on the merits, and the six factors articulated by the court were considered to determine if the defendant's proven conduct constituted a claim of malpractice: "Applying those six factors to the evidence in this case leads to the inescapable conclusion that Coleman's claim of improper transfer against Dr. Deno is within the scope of the MMA." 01-1517, p. 10, 813 So.2d 303.
In my view, the majority errs in finding the defendant's alleged conduct to be outside the scope of the Medical Malpractice Act. We are called upon to decide simply whether a claim based on a qualified health care provider's alleged unintentional breach of a statutory duty involving health care services is subject to the procedural requirements of the malpractice act. Following Richard, I believe the trial court erred in overruling the Hospital's exception of prematurity.
NOTES
[1] La.Code Civ.P. art. 2083(A): An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, from an interlocutory judgment which may cause irreparable harm, and from a judgment reformed in accordance with a remittitur or additur under Article 1814.