# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-237

RICHARD QUINNEY

VERSUS

THE SUMMIT OF ALEXANDRIA, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 217,649
HONORABLE ALFRED A. MANSOUR, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Lawrence B. Frieman
Juge, Napolitano, Guilbeau, Ruli, Frieman & Whiteley
3320 West Esplanade Avenue North
Metairie, LA   70002
(504) 831-7270
COUNSEL FOR DEFENDANTS/APPELLEES:
    The Summit of Alexandria
    Affiliated Nursing Homes, Inc.

Kimberly A. Ramsey
Nix, Patterson, & Roach, L.L.P.
401 Edwards Street, Suite 820
Shreveport, LA   71101
(318) 425-9255
COUNSEL FOR PLAINTIFF/APPELLANT:
    Richard Quinney

AMY, Judge.

The plaintiff brought suit alleging, among other claims, violations of the Nursing Home Residents Bill of Rights by the defendant nursing home and nursing home operator. The plaintiff alleged that the nursing home failed to keep his father, a resident, and his bed linens clean of bodily waste. The district court granted the defendants' exception of prematurity, requiring that the claims be brought before a Medical Review Panel along with the defendants' medical malpractice claims. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

**Factual and Procedural Background**

Richard Quinney brought suit individually and on behalf of the estate of his father, Edward Quinney, for damages he alleges that his father sustained while he was a resident at a nursing home, The Summit of Alexandria, d/b/a The Summit Retirement Center, Inc. ("The Summit"). In his original petition,[1] Mr. Quinney alleges that his father entered The Summit on August 15, 2003.[2] The record demonstrates that Edward Quinney was "bed-bound and unable to move himself" as well as incontinent of bladder and of bowel. Richard Quinney alleges in his amended petition that The Summit was "chronically understaffed" and unable to meet the basic life needs of the residents. Specifically, the plaintiff alleges that Edward Quinney was not turned and repositioned often enough to prevent the formation of

---

[1] Mr. Quinney submitted an "Original Petition" on July 9, 2004. The defendants filed a dilatory exception on August 26, 2004. The plaintiff thereafter filed a "First Supplemental and Amending Petition" on September 17, 2004.

[2] We note that the record is unclear as to the date in which Edward Quinney began his residence at The Summit. At the hearing on the dilatory exception, the plaintiff's counsel stated that Edward Quinney entered The Summit in August, 2003. The original petition and both parties' appellate briefs state that Edward Quinney began his residency at The Summit on August 15, 2003. However, the amended petition states that Edward Quinney was admitted to The Summit in April, 2003.

pressure sores, was not provided with sufficient fluids or food to prevent dehydration or malnutrition, and was not cleaned after each incontinent episode so as to prevent urine and fecal contact with his skin for an extended period of time.

In his amended petition, Richard Quinney asserted multiple claims against Affiliated Nursing Homes ("Affiliated")[3] and The Summit. He alleged violations of the Nursing Home Residents' Bill of Rights ("NHRBR") as set forth in La.R.S. 40:2010.8. Mr. Quinney also asserted a negligence claim, which was "separate and distinct from the medical malpractice claim[,]" for inadequate custodial care provided to Edward Quinney after August 15, 2003. Relating specifically to Affiliated, Mr. Quinney asserted negligence claims relating to corporate negligence and/or misconduct as well as a medical malpractice claim.[4]

The defendants filed a dilatory exception of prematurity, stating that a plain reading demonstrates that the conduct alleged by the plaintiff would be considered malpractice under the Louisiana Medical Malpractice Act ("MMA"). In their memorandum in support of the prematurity exception, the defendants reviewed the MMA's requirement that all medical malpractice actions brought against "qualified health care providers" be submitted to a medical review panel prior to the filing of a suit in district court. *See* La.R.S. 40:1299.41; La.R.S. 40:1299.47. The defendants further averred that The Summit became a qualified health provider with the Louisiana Patient's Compensation Fund on November 29, 2003. Consequently, the defendants argued that any of the plaintiff's allegations occurring on or after November 30, 2003 should be dismissed as premature.

---

[3] Mr. Quinney alleged that Affiliated Nursing Homes, Inc. "owned, operated, and/or controlled" The Summit.

[4] It appears that the parties do not contest that Affiliated is not currently a qualified health care provider, nor was it at any time relevant to the instant matter.

2

Following a hearing, the district court granted the defendants' exception with regard to the plaintiff's claims against The Summit for allegations which occurred on or after November 29, 2003. However, the exception was denied for any allegations which occurred prior to November 29, 2003 and for all allegations against Affiliated. The plaintiff now appeals the granting of the exception, arguing that the alleged acts and omissions constitute negligent violations actionable pursuant to the NHRBR, not medical malpractice actionable solely under the MMA.

**Discussion**

The district court granted the defendants' exception of prematurity, finding that the claims made by the plaintiff fell solely within the authority of the MMA, and "any and all allegations[,]" including those that the plaintiff brought under the authority of the NHRBR, were premature. The district court's determination as to which law is applicable to the plaintiff's claims is a question of law, which we will review *de novo* to determine if the trial court's ruling was legally correct. *McKnight v. D&W Health Services*, 02-2552 (La.App. 2 Cir. 11/7/03), 873 So.2d 18; *Cleland v. City of Lake Charles*, 02-805 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writ denied*, 03-1380, 03-1385 (La.9/19/03), 853 So.2d 644, 645.

The plaintiff notes in his appellate brief that on July 8, 2004, he filed a request for the formation of a Medical Review Panel with the Louisiana Patient's Compensation Fund in order to review his medical malpractice claims. However, he avers that his appeal does not address those separate malpractice claims, but only concerns violations of Edward Quinney's rights under the NHRBR, which constitute a separate and distinct cause of action. The plaintiff claims that Edward Quinney was left to lie in his own bodily waste for extended periods of time, which should not be classified as medical malpractice, but as a violation of the rights afforded him by the

3

NHRBR. The plaintiff asserts that the NHRBR provides a remedy "in addition to" other rights and remedies provided under Louisiana law and, more specifically, the MMA. The defendants, however, argue that the allegations made by the plaintiff either constitute a medical malpractice claim in their own right, or are "inextricably interwoven into the plaintiff's medical malpractice claim."

The MMA includes nursing homes within its definition of "hospitals" as types of health care providers which are subject to its authority. La.R.S. 40:1299.41(A)(4). The MMA also states that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." La.R.S. 40:1299.47(B)(1)(a)(i). The Medical Review Panel reviews the plaintiff's negligence claims to determine whether the defendant acted within the appropriate standards of care or committed some form of medical malpractice. La.R.S. 40:1229.47(G).

In addition to regulation by the MMA, nursing homes were also made subject to the NHRBR upon its adoption by the legislature in 1985. The legislative intent for the bill of rights was stated in La.R.S. 40:2010.6 as follows:

> The legislature finds that persons residing within nursing homes are isolated from the community and often lack the means to assert their rights as individual citizens. The legislature further recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and some personal freedom. It is therefore the intent of the legislature to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing home residents' right to self-determination. It is further the intent that the provisions of R.S. 40:2010.6 through R.S. 40:2010.9 complement and not duplicate or substitute for other survey and inspection programs regarding nursing homes.

The NHRBR provisions require all nursing homes to "adopt and make public a statement" of their residents' rights and responsibilities, and then to treat residents in

4

accordance with the statement, which must include twenty-two enumerated rights. La.R.S. 40:2010.8.[5]

The NHRBR is enforceable by the Department of Health and Hospitals or through private action on the part of the aggrieved resident. La.R.S. 9:2010.6-9:2010.9. Louisiana Revised Statutes 40:2010.9 provides for civil enforcement of a violation of any of the enumerated rights, stating in relevant part:

A. Any resident who alleges that his rights, as specified in R.S. 40:2010.8, have been deprived or infringed upon may assert a cause of action for injunctive relief against any nursing home or health care facility responsible for the alleged violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights or to enjoin any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney fees, and costs of the action, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.

B. The remedies provided in this Section shall not be construed to restrict other legal and administrative remedies available to a resident

---

[5] In *Richard v. Louisiana Extended Care Centers, Inc.*, 02-978, p.4 (La. 1/14/03), 835 So.2d 460, 463, the Louisiana Supreme Court summarized the rights enumerated by the NHRBR as follows:

(1) to civil and religious liberties; (2) to free communication, including use of mail, telephone, overnight visitation outside the nursing home with family and friends, flexible visitation hours; (3) to present grievances; (4) to manage one's own finances; (5) to be informed of what services he has to pay for without governmental assistance; (6) to be adequately informed of his medical condition and proposed treatment, and participate in the planning of such treatment, including the right to refuse treatment, unless otherwise indicated by the resident's physician; (7) "to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Department of Health and Hospitals;" (8) to have privacy; (9) to be treated with dignity; (10) to be free from mental and physical abuse and from physical and chemical restraints, except in limited circumstances; (11) to be transferred and discharged under certain circumstances; (12) to select a personal physician; (13) to retain and use personal clothing and possessions; (14) to copies of rules and regulations; (15) to information concerning bed reservation in case of hospital stay; (16) to prompt response to all reasonable requests and inquires; [sic] (17) to withhold payment to physician if not visited; (18) to refuse medical research request; (19) to use tobacco; (20) to consume alcohol; (21) to reasonably retire and rise; (22) to have change in medical condition reported. La. R.S. 40:2010.8.

and to the Department of Health and Hospitals or other governmental agencies.

The second circuit discussed the jurisprudence addressing claims against nursing homes in *Henry v. West Monroe Guest House, Inc.*, 39,442, p. 3-4 (La.App. 2 Cir. 3/2/05), 895 So.2d 680, 682-83, stating:

> Several cases in Louisiana have discussed the fine line between MMA claims and NHRBR claims. In *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978 (La.01/14/03), 835 So.2d 460, as in the case at bar, the court dealt with a plaintiff alleging violations of the NHRBR, while the defendant asserted that the claims fell under the MMA. In discussing nursing home resident claims, the *Richard* court stated that "the nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be 'confined' to the nursing home. However, in our view, it was not the intent of the legislature to have every 'act, . . ., by any health care provider . . . during the patient's . . . confinement' in a nursing home covered by the MMA." *Id.* at 468. The supreme court concluded that, "not all negligent acts by a nursing home will constitute medical malpractice under the MMA. To constitute a medical malpractice claim, the alleged negligent act must be related to the nursing home resident's medical treatment at the nursing home under the requirements of Louisiana law." *Id.* at 469.
>
> In *Coleman v. Deno,* 01-1517 (La.01/25/02), 813 So.2d 303, the supreme court set forth six factors to be considered in determining whether plaintiffs' claims lie in malpractice or the NHRBR. In particular, [1] whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; [3] whether the pertinent act or omission involved assessment of the patient's condition; [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; [5] whether the injury would have occurred if the patient had not sought treatment; and [6] whether the tort alleged was intentional.

The *Henry* court considered a claim nearly identical to the one made by the plaintiff in the instant matter. In *Henry*, the plaintiffs alleged that their mother "was left [by the defendant nursing home] to lie in her own urine and feces until it dried to her body, causing her to suffer physical and emotional trauma[.]" *Id.* at 681-82. The plaintiffs initiated a separate proceeding with a Medical Review Panel to investigate

6

medical malpractice claims, including dehydration, malnutrition, contractures, bed sores, and death. As in the instant case, the trial court in *Henry* granted the defendant's prematurity exception so that the entire matter could be considered by the medical review panel. Stating that the Medical Review Panel would consider all malpractice aspects of the case, the second circuit considered only the plaintiff's dignity claim on appeal and applied the six factors set forth in *Coleman*, 813 So.2d 303, for determining whether a negligent act by a health care provider is covered by the MMA. The court stated:

> First, we find that changing a diaper is not medical treatment. Many non-medical persons have done it without difficulty or specialized medical training. Second, no medical expert is needed to determine whether a diaper is in need of a changing. Again, we are not discussing causation of decubitus ulcers, but instead, the personal dignity of a nursing home resident. Third, a medical assessment of the resident's condition was not necessary as Ms. Henry's care plan called for a diaper change every two hours, or as needed. This court has previously held that complaints are not treatment related when the failure of the nursing home arises from a failure to abide by the patient care plan. *See Terry v. Red River Center Corporation*, 37,991 (La.App.2d Cir.12/10/03), 862 So.2d 1061, *writ denied*, 04-0094 (La.03/19/04), 869 So.2d 856. Similarly, the Fifth Circuit has found that failure to abide by a care plan is not a medical assessment. *See Jordan v. Stonebridge, L.L.C.*, 03-588 (La.App. 5th Cir.11/25/03), 862 So.2d 181, *writ denied*, 03-3520 (La.03/19/04), 869 So.2d 851. Fourth, changing a diaper is something routinely performed by nurses aides, and not under the direction of a physician. Fifth, Ms. Henry would have suffered a loss of dignity for having dirty diapers, regardless of her residence in the nursing home. Sixth, this factor is not applicable in this case. Under this analysis, we find that plaintiffs' complaints fall under the NHRBR, and not the MMA.

*Id.* at 683. The *Henry* court concluded that the plaintiffs could maintain their MMA claim and their NHRBR claim "separately and simultaneously[,]"and remanded the NHRBR claim for further proceedings with instructions that the claims relating to physical trauma and injuries were to be placed before the medical review panel. *Id.* at 684. We also note that the second circuit has twice considered the same issue, NHRBR dignity claims due to an alleged failure to keep a nursing home patient free

of his or her own waste, since *Henry* with the same results.  *See Furlow v. Woodlawn Manor*, 39,485 (La.App. 2 Cir. 4/20/05), __ So.2d __;  *Burks v. Chrustus Health Monroe*, 39,540 (La.App. 2 Cir. 4/6/05), __ So.2d __.

This court has previously held that NHRBR claims may brought directly in district court, separately from MMA claims and without having previously been submitted to a Medical Review Panel.  In *Pender v. Natchitoches Parish Hospital*, 01-1380 (La.App. 3 Cir. 5/15/02), 817 So.2d 1239 (*Pender I*), the plaintiffs brought a NHRBR claim and a medical malpractice claim, in two separate petitions, for damages sustained in relation to the death of their mother following her fall from a wheelchair in the defendant nursing home.  A panel of this court allowed the NHRBR claim to continue without having been submitted to a Medical Review Panel, stating that "the theory of recovery under La.R.S. 40: 2010.6 *et seq.* is separate and distinct from the theories of recovery traditionally thought to comprise a medical malpractice action."  *Id*. at 1243.[6]   The Louisiana Supreme Court considered the issue, and *Pender* specifically, in *Richard v. Louisiana Extended Care Centers*, 02978 (La. 1/14/03), 835 So.2d 460.  In *Richard*, the supreme court held that separate claims

---

[6] The decision was based largely on the language of La.R.S. 40:2010.9, the civil enforcement provision of the NHRBR, which stated that the remedies for alleged NHRBR violations were "in addition to and cumulative with other legal and administrative remedies available to a resident[.]"

The legislature recently amended La.R.S. 40:2010.9 to state that the remedies provided for "shall not be construed to restrict other legal and administrative remedies available to a resident[.]" *See* Acts 2003, No. 506, §1, which became effective on August 15, 2003.

However, the *Pender I* decision also stated that the decision was based on additional grounds. First, the court noted that remedies for NHRBR claims stand alone from regular tort claims.  The court also found that because the NHRBR is narrower and more focused than the MMA, the NHRBR must prevail as an exception to the MMA.  Third, the panel noted that the *Pender* plaintiffs did not allege any acts of malpractice or even general negligence in their petition, but merely alleged the NHRBR violations.  Fourth, the court considered a statement made by the second circuit, which indicated that a NHRBR action could be brought in a district court without having been submitted to a Medical Review Panel. *See Gorham v. HCA Health Services of Louisiana,* 34,721, p.3 (La.App. 2 Cir. 5/17/01), 786 So.2d 348, 350.  Finally, the *Pender I* court found that the allegations made by the plaintiffs did not constitute "malpractice" within the scope of the MMA when the *Coleman* test was applied.

could be brought under the NRHBR; however, medical malpractice claims brought against a nursing home qualified under the MMA must be brought pursuant to the provisions of the MMA. This court was then called upon to consider *Pender* again, in light of the supreme court's findings in *Richard*. In *Pender v. Natchitoches Parish Hosp.,* 01-1380 (La.App. 3 Cir. 5/7/03), 844 So.2d 1107 *(Pender II),* this court found that a determination was required as to whether the acts of negligence alleged by the plaintiffs constituted medical malpractice claims, thereby invoking the provisions of the MMA. After listing the six *Coleman* factors, the *Pender II* court noted that *Coleman* was decided following a full trial on the merits of the case; *Pender* had been considered on the appeal of a prematurity exception. *Pender II* was remanded for a full evidentiary hearing on the exceptions, which the court instructed be focused on the applicability of the *Coleman* factors.

The plaintiff in the instant matter has restricted his claims to the NRBR action alone, "affirmatively stat[ing] that no claim for medical malpractice is being asserted" within the claims made in the amended petition. Consequently, we must determine whether the plaintiff's allegations actually do constitute malpractice as defined by the MMA, making them subject to a Medical Review Panel. As stated, the Louisiana Supreme Court provided six factors for determining whether conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA[7] in *Coleman*, 813 So.2d 303. The plaintiff specifically alleged in his amended petition

_____

[7] La.R.S. 40:1299.41 defines malpractice as follows:

"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

9

that Edward Quinney's personal dignity was violated when he was left to lie in his own urine and waste for extended periods of time without being cleaned.[8]

We consider first whether the plaintiff's allegations are related to treatment or caused by a dereliction in professional skill. In this instance, changing Mr. Quinney's bed linens, adult diaper, or generally cleaning him of his waste does not require any specialized medical training or skill. The defendants have not met their burden of demonstrating that the failure to clean Edward Quinney and his linens arose from any particular condition for which he was receiving treatment at the nursing home. Although the defendants point to Edward Quinney's incontinence, we find the obligation to keep him clean and to change his soiled linens arose out of the nursing home's obligation to provide him continuous custodial care and not out of medical treatment. *See Furlow,* __ So.2d __; *Richard,* 835 So.2d 460. Next, expert medical testimony is not necessary to make a determination as to whether The Summit failed to keep Edward Quinney and his linens clean of his waste and, if so, whether that failure compromised his personal dignity.[9] Third, a medical assessment was not necessary to determine that Edward Quinney's person needed to be kept clean and his

---

[8] The plaintiff also generally referenced four subsections of the NHRBR's listed rights in La.R.S. 40:2010.8, as follows:

a)      Failing to provide EDWARD QUINNEY privacy in meeting personal needs, including privacy during toileting, bathing, and other activities of personal hygiene. La. R.S. 40:2010.8(A)(8);

b)      Failing to treat EDWARD QUINNEY courteously, fairly, and with the fullest measure of dignity. La.R.S. 40:2010.8(A)(9);

c)      Failing to allow EDWARD QUINNEY to be free from mental and physical abuse. La. R.S. 40:2010.8(A)(10); and

d)      Failing to allow EDWARD QUINNEY to rise and retire in accordance with his reasonable requests. La.R.S. 40:2010.8(A)(21).

[9] We note that this finding is limited to the plaintiff's NHRBR dignity claim, as we are not considering any claim regarding causation of pressure sores, contractures, or other alleged medical conditions.

bed linens changed when they became soiled while he was residing at the defendant's nursing home. Fourth, the acts which form the basis of the dignity violations alleged by the plaintiff do not relate to a physician-patient relationship involving Edward Quinney. Bathing patients, changing bed linens, and checking adult diapers are generally considered within the regular responsibilities of nursing home personnel, without application of specialized medical knowledge as an element of the custodial care for which the services of a nursing home are engaged; such tasks are not generally performed under the direction and/or supervision of a physician.

The final two *Coleman* factors do not influence our analysis. Regarding the fifth factor, Edward Quinney's dignity obviously would have been violated if he had been maintained in the condition alleged, no matter where he was residing. However, we have already stated that the nursing home's obligation to clean Edward Quinney and his surroundings arose due to the nursing home's custody of him, and not due to medical treatment. The sixth factor is inapplicable to this matter because the plaintiff has not alleged that any intentional torts were committed.

Consequently, we conclude that the plaintiff's allegations that the defendants failed to keep Edward Quinney's person and his bed linens clean and free of Mr. Quinney's waste do not constitute a medical malpractice claim under the MMA, and therefore may be considered by the trial court. The plaintiff may pursue his MMA claim separately from and simultaneously with his other claims, including those related to alleged violations of the rights afforded Edward Quinney by the NHRBR.

Our review of the record indicates that the parties do not dispute that Affiliated has never been a qualified medical care provider and that The Summit was only qualified after November 29, 2003. Therefore, we affirm the trial court's decision to deny the defendants' exception of prematurity regarding any claims against

Affiliated and any claims against The Summit of Alexandria, Inc. d/b/a The Summit Retirement Center, Inc., which occurred before November 29, 2003. Regarding those claims against The Summit of Alexandria, Inc. d/b/a The Summit Retirement Center, Inc., which occurred after November 29, 2003, we affirm the trial court's decision to grant the exception of prematurity regarding any claims which constitute medical malpractice under the MMA; those claims are properly raised before a Medical Review Panel. However, because we have concluded that the plaintiff's claim that Edward Quinney suffered indignities due to the defendants' failure to clean his person and his linens of his bodily waste does not constitute a medical malpractice claim, the plaintiff is not required to bring that claim before a Medical Review Panel as required by the MMA. Accordingly, we reverse the trial court's ruling on the prematurity exception regarding the plaintiff's non-malpractice claims which occurred on or after November 29, 2003, and remand the matter for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings. All costs of this proceeding are assigned to the defendants, The Summit of Alexandria, d/b/a The Summit Retirement Center and Affiliated Nursing Homes, Inc.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**