# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-434

**JASON SIMON AND RITA SIMON**

**VERSUS**

**LAFAYETTE PHYSICAL REHABILITATION**

**HOSPITAL, LLC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20225812
HONORABLE ROYALE L. COLBERT, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Ledricka J. Thierry, Judges.

**REVERSED AND RENDERED.**

**Cle Simon**
**Simon Law Offices**
**Post Office Box 52242**
**Lafayette, Louisiana 70505-2242**
**(337) 232-2000**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Jason Simon**
    **Rita Simon**

**Kevin R. Duck**
**Duck Law Firm, LLC**
**5040 Ambassador Caffery Parkway, Suite 200**
**Lafayette, Louisiana 70508**
**(337) 406-1144**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Jason Simon**
    **Rita Simon**

**Adam P. Gulotta**
**J. Ryan Pierret**
**Judice & Adley**
**Post Office Drawer 51769**
**Lafayette, Louisiana 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Lafayette Physical Rehabilitation Hospital**

**SAVOIE, Judge.**

Defendant Lafayette Physical Rehabilitation Hospital (LPRH) appeals the judgment of the trial court, denying its Exception of Prematurity. For the following reasons, we reverse and render judgment.

## FACTS AND PROCEDURAL HISTORY

On June 2, 2022, Plaintiff Jason Simon was a patient receiving rehabilitation services at LPRH following a stroke when he fell out of his wheelchair. Due to his medical condition, he had been assessed as a "high risk" for falls. Mr. Simon and his wife Rita filed a Petition for Damages on October 31, 2022. The petition alleged LPRH was at fault because Mr. Simon was left unattended in an outside area of the hospital. The petition further alleged that the wheelchair did not have restraints nor an alarm and that Mr. Simon suffered serious injuries as a result of the fall.

In response, LPRH filed a Dilatory Exception of Prematurity, wherein it argued that the Louisiana Medical Malpractice Act (LMMA) applies to this case, and it must first be presented to a medical review panel. After a hearing on the exception, the trial court denied LPRH's exception. LPRH now appeals.

## ASSIGNMENTS OF ERROR

1. The trial court erred in denying the Dilatory Exception of Prematurity when the facts alleged in the Petition for Damages and supported by the evidence offered in support of the Dilatory Exception of Prematurity, show that the plaintiffs' lawsuit sounds in medical malpractice and therefore must be presented to a medical review panel before a lawsuit can be filed.

2. The trial court erred in finding that there is a "lack of case law directly on point in this matter with reference to rehabilitation hospital[s]" when rendering its decision and applying the *Coleman v. Deno*[, 01-1517, 01-1591, 01-1521 (La. 1/25/02), 813 So.2d 303,] factors to this case, resulting in the incorrect denial of the Dilatory Exception of Prematurity.

## LAW AND DISCUSSION

At the outset, we note that the trial court's denial of the exception of prematurity is not a final judgment; therefore, "we must find irreparable injury in order to entertain this appeal." *Sonnier v. Opelousas Gen. Hosp.*, 95-1560, p. 2 (La.App. 3 Cir. 5/8/96), 688 So.2d 1040, 1041. In *Sonnier*, the defendant filed an exception of prematurity, asserting that the matter should have first been put before a medical review panel prior to the plaintiff filing suit. The trial court denied the exception, and the defendant appealed. In deciding whether to allow an appeal in the case, this court found:

> The Medical Malpractice Act (La.R.S. 40:1299.41 *et seq.*) requires that all claims against a health care provider be submitted to a medical review panel before suit is filed. La.R.S. 40:1299.47(B)(1)(a)(i). This requirement has been held to be reasonable and not an unconstitutional restriction of access to the courts. *Everett v. Goldman,* 359 So.2d 1256 (La.1978). The use of medical review panels is thought to encourage settlement, weed out frivolous claims, reduce litigation costs and actual awards, and is reasonably related to the guarantee of continued health care at reasonable costs for Louisiana citizens. *Id.* We conclude that to require Opelousas General Hospital to forego the benefits afforded by the medical review panel would cause irreparable injury to the hospital since some of these benefits could not be fully reestablished by a reversal on appeal. Accordingly, we find that the trial court's ruling is an appealable issue.

*Id.*

Based on the opinion in *Sonnier*, we find that LPRH would suffer irreparable injury if required to forego the benefits afforded by the medical review panel. As such, we find this matter properly appealable.

In *Dickson v. Odudo*, 22-48, p. 16 (La.App. 3 Cir. 10/5/22), 349 So.3d 146, 155, this court explained:

> "The dilatory exception of prematurity provided in La.Code Civ.Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination." *Williamson v.*

2

*Hosp. Serv. Dist. No. 1 of Jefferson*, 04-451, p. 4 (La. 12/1/04), 888 So.2d 782, 785. "An action is premature when it is brought before the right to enforce it has accrued." *Id.* at 785. Under the Louisiana Medical Malpractice Act, "a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel." *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008, p. 6 (La. 9/5/07), 966 So.2d 519, 523. The dilatory exception of prematurity "is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim" to the "medical review panel before filing suit against the provider." *Id.* at 523. The party raising the exception carries the burden of proving prematurity. *Id.*

"Whether a claim sounds in medical malpractice is a question of law reviewed under a *de novo* standard." *Thomas v. Reg'l Health Sys. of Acadiana, LLC*, 19-507, 19-524, p. 8 (La. 1/29/20), 347 So.3d 595, 601.

LPRH argues that this matter should have been submitted to a medical review panel because it is a qualified healthcare provider pursuant to the LMMA, and Plaintiffs' claims are malpractice under the Act. Louisiana Revised Statutes 40:1231.1(A)(10) defines a healthcare provider as:

> "Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, [or] nursing home[.]

LPRH is a qualified healthcare provider under the LMMA. That is not an issue before us. However, for a claim to be covered by the LMMA, the defendant must be a qualified healthcare provider, and the plaintiffs' claims must be considered malpractice as defined by the Act. Louisiana Revised Statutes 40:1231.1(13) states:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from

3

acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

The Simons specifically allege in their Petition for Damages that LPRH was negligent in the following ways:

a.   Failing to train and instruct their employees to monitor, supervise or attend to [] patients who are fall risks, such as JASON SIMON;

b.   Failing to hire person(s) qualified to monitor, supervise and/or attend to patients that are fall risks, such as JASON SIMON;

c.   Failure to implement and/or enforce procedures and/or protocols to prevent and/or reduce the likelihood of patients like and including JASON SIMON from falling; [and]

d.   Other acts of negligence that may be discovered during these proceedings.

The Simons also allege that LPRH is vicariously liable for the actions of their employees, including:

a. Failing to monitor, supervise or attend to JASON SIMON while he was in a wheelchair outside of the facility;

b. Failing to take reasonable measures to prevent JASON SIMON from falling;

c. Failing to equip and/or use a wheelchair equipped with a tilt alarm;

d. Failing to act reasonably and prudent [sic] under the circumstances; and

e. Other acts of negligence that may be discovered during these proceedings.

After a hearing on the exception of prematurity, the trial court found:

Considering the lack of case law directly on point in this matter with reference to a rehabilitation hospital, the factors established in *Coleman v. [Deno]*, [813 So.2d 303,] and *Pender v. Natchitoches Parish Hosp.*, [01-1380 (La.App. 3 Cir. 5/15/02), 817 So.2d 1239,] and the fact that plaintiff's injuries arose from a fall out of [a]

4

wheelchair while outside due to not being properly strapped in or restrained at all, along with the reasoning in *White v. [Glen] Retirement [System], [50,508 (La.App. 2 Cir. 4/27/16), 195 So.3d 485,]* and <u>LSA-R.S. 40:1231.1. et seq</u>, the exception of prematurity must be denied and this matter allowed to proceed in regular tort without the need for a medical review panel.

(Footnotes Omitted.)

The six-factor test for determining whether a claim is medical malpractice under the LMMA is set forth in *Coleman, supra*:

(1) whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill;

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

(3) whether the pertinent act or omission involved assessment of the patient's condition;

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

*Patterson v. Claiborne Operator Group, L.L.C.*, 55-264, p. 14 (La.App. 2 Cir. 11/15/23), 374 So.3d 299, 307–08 (quoting *Coleman*, 813 So.2d at 315–16).

"In the jurisprudence, situations where patients have fallen from wheelchairs have been classified by the courts as involving the handling, loading and unloading of a patient which comes directly under the [LMMA's] definition of malpractice." *White,* 195 So.3d at 490–491. However, in *Williamson*, 888 So.2d 782, a patient was injured after falling out of a wheelchair due to a wheel falling off. The court determined that the "alleged negligence in failing to repair a wheelchair and in failing to make sure that the wheelchair was in proper working condition prior to

5

returning it to service was not subject to [the LMMA.]" *White*, 195 So.3d at 491. In order to determine whether the Simons' claims are premature, we must apply the *Coleman* factors and decide if they are considered malpractice under the LMMA or general negligence.

The trial court applied *Pender v. Natchitoches Parish Hospital*, 817 So.2d 1239 (*Pender I*), in finding that this case sounded in general negligence rather than medical malpractice. The Simons also argue on appeal that *Pender I* is controlling. In *Pender I*, the plaintiffs filed two separate petitions: one was a medical malpractice claim and one was a Nursing Home Residents' Bill of Rights (NHRBR) claim, for damages sustained as a result of the death of their mother, who fell from a wheelchair while in a nursing home. The defendant filed an exception of prematurity, and in the alternative, exceptions of no right and no cause of action. The trial court denied the exceptions, and the defendant appealed. The issue was whether the NHRBR claim could go forward without being submitted to a medical review panel. Affirming the trial court, the appellate court found that the NHRBR did not need to be presented to a medical review panel. While analyzing the application of the NHRBR and the LMMA, the appellate court applied the *Coleman* factors and found that its decision comported with *Coleman*. Specifically, the appellate court found that the plaintiffs' claims were not medical malpractice and did not fall within the LMMA. It is this discussion of the *Coleman* factors in *Pender I* that the Simons rely on in support of their argument that their claims sound in general negligence rather than medical malpractice.

The defendant in *Pender I* filed for a Writ of Certiorari and/or Review with the Louisiana Supreme Court, which remanded the case to the appellate court for reconsideration in light of its ruling in *Richard v. Louisiana Extended Care*

*Centers, Inc.*, 02-978 (La. 1/14/03), 835 So.2d 460. *Pender v. Natchitoches Par. Hosp.*, 02-2105 (La. 3/21/03), 840 So.2d 529. "In *Richard,* the supreme court held that separate claims could be brought under the NRHBR; however, medical malpractice claims brought against a nursing home qualified under the [LMMA] must be brought pursuant to the provisions of the [LMMA]." *Quinney v. Summit of Alexandria*, 05-237, pp. 8–9 (La.App. 3 Cir. 6/1/05), 903 So.2d 1226, 1232.

On remand, the appellate court in *Pender v. Natchitoches Parish Hospital*, 01-1380, pp. 1–2 (La.App. 3 Cir. 5/7/03), 844 So.2d 1107, 1108 (*Pender II*), explained, "[O]ur initial opinion improperly concluded that a violation of the NHRBR does not invoke the provisions of the LMMA such that the plaintiff's claim is premature due to the failure to present the case to a medical review panel." *Pender II* then stated that the court must now determine whether the alleged violation constituted medical practice. It listed the *Coleman* factors and found that the record before the court was inadequate to resolve the issue. The appellate court then remanded the case to the trial court "for a full evidentiary hearing on the exceptions of prematurity and no right of action, focusing on the applicability of the *Coleman* factors to the particular facts of this incident." *Id.* at 1110.

In the present case, the trial court in its written reasons cited *Pender I* stating, "[I]n a case where a nursing home resident was not receiving medical care when she fell out of a wheelchair, the court held that [the] claim was not governed by the [LMMA]." The trial court's reliance on *Pender I*'s application of the *Coleman* factors is misplaced. As discussed above, the *Pender II* court effectively overruled *Pender I*'s ruling that the claims were not medical malpractice under the LMMA. Instead, the *Pender II* court found that there was not enough evidence to make a determination as to whether the claims constituted medical malpractice and

7

remanded the case to the trial court.  Therefore, we find the trial court's reliance on *Pender I* inappropriate.

The trial court also cited *White*, 195 So.3d 485, in its decision to rule in favor of the Simons.  In *White*, the plaintiff, a ninety-four-year-old-woman, fell out of her bed that had been placed in the highest position by a certified nursing assistant.  She suffered fractures, which led to the amputation of one of her legs.  She filed a petition, alleging intentional tort, breach of fiduciary duty, and breach of contract.  The defendant filed an exception of prematurity, asserting the claims in the petition fell under the LMMA.  The trial court granted the exception, and the second circuit affirmed the judgment.  The *White* court determined that the defendant successfully disputed the claim of intentional tort and further found that "the primary claim regarding the failure to position the bed relates in our opinion to the negligent rendering of care and the assessment of the patient's condition[.]" *Id.* at 494.

It is unclear why the trial court relied on the *White* case, as the *White* court ultimately found that the claims fell under the LMMA and were premature.  Insofar as the court in *White* has a singular citation to *Pender I*, we have already determined that case to be inapplicable.

Applying the *Coleman* factors to the present case, the first factor states that the wrong must be "treatment related" or caused by a dereliction of skill.  In *Matherne v. Jefferson Parish Hospital District No. 1*, 11-1147 (La.App. 5 Cir. 5/8/12), 90 So.3d 534, *writ denied*, 12-1545 (La. 10/12/12), 98 So.3d 873, the plaintiff sued after falling while being transported to a hospital bed by a hospital employee.  When discussing the first *Coleman* factor, the court stated:

8

The first *Coleman* factor considers whether the particular wrong is "treatment related" or caused by a dereliction of professional skill. The record reflects that West Jefferson has an organizational-wide "Fall Assessment and Prevention" program, which focuses on assessing and identifying patients at risk for falls and on educating staff on fall prevention. The program mandates that West Jefferson employ a scoring system—the Morse Risk Fall Assessment—to determine all patients' risk for falls. Some factors that comprise the risk assessment include fall history, ambulatory aid, and gait, which is the manner of movement. Once all factors are considered, patients are then assigned a score which is indicative of their risk for falls. Patients scoring 45 or higher are considered high risk.

In this case, West Jefferson performed a risk assessment on Mrs. Matherne on September 2, 2010, at 7:30 A.M.—approximately five hours before the fall occurred. The assessment indicated that Mrs. Matherne had a history of falls and a weakened gait. Her overall fall-risk score at that time was 70, which is high risk. Because of the high-risk score, West Jefferson's fall prevention program should have been implemented as part of Mrs. Matherne's treatment. Because fall assessment is part of the treatment for all patients at West Jefferson, the first *Coleman* factor is satisfied.

*Id.* at 537.

Similarly, in the present case, LPRH administered a Fall Risk Assessment to Mr. Simon. The risk assessment included factors such as history of falling, ambulatory aid, and gait. Mr. Simon was assigned a score to determine his fall risk. His total score, after assessing all of the factors, was 75. A score of more than 45 is considered high risk. Therefore, Mr. Simon was assessed as a high risk fall patient. As a result, the nursing staff implemented a comprehensive care plan for Mr. Simon. He was regularly rounded on by nurses, as well as undergoing daily fall assessments. On the day of the incident, Mr. Simon's fall risk score was 40. One of the fall precautions was to lock the wheels on the wheelchair when the patient was occupying it. This procedure was documented every two hours by a nurse. On the day in question, the nurse noted that the wheelchair was locked at 9:00 a.m. The incident occurred at 9:20 a.m.

9

The Simons argue in their brief that while it is true that Mr. Simon was administered a Fall Risk Assessment, "at the time of the fall, LPRH was not assessing, treating or otherwise even monitoring him." However, "there is no requirement that an action must be contemporaneous with a patient's treatment in order to fall under the [LMMA]." *Dupuy v. NMC Operating Co., L.L.C.*, 15-1754, p. 10 (La. 3/15/16), 187 So.3d 436, 442.

The Simons also cite *Blevins v. Hamilton Medical Center, Inc.*, 07-127 (La. 6/29/07), 959 So.2d 440, in support of their contention that the first factor of *Coleman* has not been satisfied. In *Blevins*, the plaintiff was admitted to the hospital for incision and drainage of an infected wound on his left groin. While admitted, the plaintiff fell in his room when his hospital bed rolled as he attempted to get out of the bed to use a bedside commode. The supreme court found that the first *Coleman* factor was not satisfied because "the particular wrong alleged, *i.e.,* the furnishing of equipment not in proper working order, has nothing to do with the condition and associated treatment for which the plaintiff was hospitalized." *Id.* at 446. *Blevins* is distinguishable because in the present case, Mr. Simon was admitted to LPRH due to complications from a stroke, including issues with motor function, gait, falling, etc. As stated above, this initiated a Fall Risk Assessment, which included procedures and protocols that were necessary in caring for Mr. Simon due to his lack of mobility. As such, we find that the particular wrong alleged, that Mr. Simon was left unattended in a wheelchair, which led to his fall, to be associated with Mr. Simon's condition and the treatment for which he was hospitalized.

For these reasons and using *Matherne* as a guide, we find that the first *Coleman* factor has been satisfied.

The next *Coleman* factor concerns whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached. The allegations against LPRH include failure to train its employees, failure to hire qualified employees, failure to supervise Mr. Simon, failure to follow proper procedures, etc. We find that the allegations in the petition will require expert medical testimony to determine whether LPRH fell below the standard of care.

For the third *Coleman* factor, we must decide whether the wrong involved assessment of the patient's condition. In *Matherne*, 98 So.3d at 537, the court found that "[t]his factor [was] easily satisfied because [the defendant] require[d] an assessment of all patients to determine their fall risk factor." In the present case, Mr. Simon was admitted to LPRH as a result of a stroke he sustained which affected his movement, ability to walk, and dexterity, *inter alia*. Because of these issues, Mr. Simon was assessed for his fall risk when he was admitted, and he continued to be assessed daily.

Further, as previously discussed in *White*, the patient fell out of her bed after it had been placed in the highest position. The patient was not receiving treatment at the time. The court in *White*, 195 So.3d at 494, found that the "primary claim regarding the failure to position the bed relates in our opinion to the negligent rendering of care and the assessment of the patient's condition[.]" Similarly, we find that Mr. Simon's primary claim of being left unattended in a wheelchair when he was admitted for complications due to a stroke and had been assessed as a high risk fall patient relates to LPRH's negligent rendering of care and the assessment of the patient's condition. Therefore, we find the third *Coleman* factor to be satisfied.

11

The fourth *Coleman* factor considers whether the incident occurred in the context of a physician-patient relationship or within the scope of activities which a hospital is licensed to perform. We find that the rendering of care, or lack thereof, and the assessment of Mr. Simon as a high risk fall patient, including the procedures the hospital staff must follow regarding same, to be within the scope of activities that a hospital is licensed to perform.

Regarding the fifth *Coleman* factor, Mr. Simon's alleged damages would not have occurred had he not been admitted and received care at LPRH. As to the sixth *Coleman* factor, there are no allegations of intentional misconduct in the petition. Therefore, the fifth and sixth *Coleman* factors have been satisfied.

Accordingly, for the foregoing reasons, we find that Mr. Simon's allegations fall under the purview of the LMMA, which requires submission to a medical review panel.

**DECREE**

The judgment of the trial court denying the Exception of Prematurity filed by Lafayette Physical Rehabilitation Hospital is reversed. Judgment is now rendered in favor of Lafayette Physical Rehabilitation Hospital, granting its Exception of Prematurity and dismissing Jason and Rita Simon's claims without prejudice. Costs of this appeal are assessed to Plaintiffs Jason and Rita Simon.

**REVERSED AND RENDERED.**