# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1131

ROBERT NEIL GUILBEAU, ET AL.

VERSUS

BAYOU CHATEAU NURSING CENTER, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2004-6320-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

### MARC T. AMY
### JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AMENDED JUDGMENT VACATED. ORIGINAL JUDGMENT REVERSED IN PART AND AFFIRMED IN PART AS AMENDED.**

Thibodeaux, Chief Judge, dissents for the reasons expressed by Judge Painter. Painter, J., dissents and assigns reasons.

Dorsey C. Martin, III
Atkinson & Martin
11953 Coursey Boulevard
Baton Rouge, LA   70816
(225) 293-7100
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Robert Neil Guilbeau
    Bernice Guilbeau Kimball
    Charlene Guilbeau Wilkinson
    Earl James Guilbeau

**Milo A. Nickel, Jr.**
**The Nickel Law Firm**
**930 Lakeshore Drive**
**Lake Charles, LA   70601**
**(337) 433-8278**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Louisiana Patients Compensation Fund**

**Gregory Engelsman**
**Bolen, Parker & Brenner**
**Post Office Box 11590**
**Alexandria, LA   71315-1590**
**(318) 445-8236**
**COUNSEL FOR SECONDARY DEFENDANT/APPELLANT:**
     **Bayou Chateau Nursing Center**

AMY, Judge.

The plaintiffs filed suit against the defendant nursing home, seeking damages stemming from fall-related injuries sustained by their mother, a patient at the facility. She died approximately two months after the fall. Pursuant to stipulations as to liability for the fall, the trial court awarded damages on the plaintiffs' survival action, damages related to loss of chance of survival and acceleration of death, medical expenses, and attorney's fees. The defendant and the Louisiana Patient's Compensation Fund appeal. For the following reasons, we vacate in part, affirm in part as amended, and reverse in part.

## Factual and Procedural Background

The plaintiffs[1] are four of the children of Murdis D. Guilbeau. Ms. Guilbeau was a resident at the Bayou Chateau Nursing Center, Inc. (Bayou Chateau) on October 22, 2002 when she had a fall that resulted in fractures of her clavicle and left pelvic inferior pubic ramus. According to the record, the plaintiffs were notified of the fall on October 24, 2002. Thereafter, Ms. Guilbeau was hospitalized for her injuries. Subsequent to her release from the hospital, Ms. Guilbeau was transferred to the skilled nursing facility at Baton Rouge Health Care Center. Ms. Guilbeau died on December 23, 2002.

After proceedings before a Medical Review Panel, the plaintiffs filed suit against Bayou Chateau in April 2004, alleging that its employees' failure to attend/restrain Ms. Guilbeau and the failure to more timely report the fall was a breach of the applicable standard of care and the cause of Ms. Guilbeau's injuries. The plaintiffs prayed for damages related to a survival action and for wrongful death. Additionally, the plaintiffs sought medical expenses and attorney's fees. The latter

---

[1] The petition lists Robert Neil Guilbeau, Bernice Guilbeau Kimball, Charlene Guilbeau Wilkinson, and Earl James Guilbeau as the plaintiffs.

prayer was related to their claim that the actions/omissions of the defendant's violations were violations of the Louisiana Nursing Home Residents' Bill of Rights. *See* La.R.S. 40:2010.8.

At the commencement of the bench trial, the parties stipulated that "negligence and/or breach of the applicable standard of care by its employees directly caused Murdis D. Guilbeau to sustain a fracture of her clavicle and of her left pelvic inferior pubic ramus." The parties further stipulated that the defendant's "employees' negligence and failure to immediately report, document and treat Murdis D. Guilbeau's injuries which resulted from her fall, while said employees were in the course and scope of their employment with defendant constituted a violation of the Louisiana Nursing Home Resident's Bill of Rights, i.e., La.R.S. 40:2010.8."

The trial court entered liability and, in a judgment dated May 31, 2005, awarded damages as follows: $100,000.00 for survival action damages; $50,000.00 for "loss of chance of survival and acceleration of death" damages; $41,612.62 in medical special damages. The judgment further includes an award of "the additional sum of one-third of all amounts recovered as set forth herein as attorney['s] fees for violation of the Louisiana Nursing Home Resident's Bill of Rights, including any appeal which may be necessary." An amended judgment, dated June 13, 2005, includes an additional paragraph, indicating that "as a Qualified Healthcare Provider, the liability of Bayou Chateau Nursing Center, Inc. is limited by the Medical Malpractice Act to ONE HUNDRED THOUSAND No/100 DOLLARS ($100,000.00.), plus legal interest in accordance with La.R.S. 40:1299.42 from January 10, 2003 until paid."

2

Bayou Chateau subsequently filed a Motion for New Trial, questioning the award for loss of chance of survival and the award of medical expenses, which included the medical expenses for nursing home care after the accident, "when it was clear that plaintiffs' decedent would have required said nursing [home] care regardless of whether or not she had been injured." The trial court denied the motion.

In July 2005, the Louisiana Patient's Compensation Fund (the LPCF) intervened in the matter. The LPCF and Bayou Chateau filed motions for appeal for review of the original judgment as well as the amended judgment of June 13, 2005. The LPCF assigns the following as error in its brief to this court:

1.   The Trial Court erred by signing an "amended judgment" which substantively changed a previously rendered final judgment.

2.   The Trial Court erred by determining that attorney fees may be awarded pursuant to the Medical Malpractice Act and or that the Fund may be liable for attorney fees pursuant to the Medical Malpractice Act.

3.   The court below erred by awarding the full measure of damages relative to the survivor claims rather than awarding the plaintiffs their virile share of those damages.

4.   The Court below erred by awarding "loss of chance and acceleration of death" damages when all medical evidence established that there was no association between the plaintiff's death and the injuries sustained by the plaintiff.

5.   The court below awarded damages that were excessive under the circumstances.

Bayou Chateau advances the following assignments of error:

1.   The trial court erred in awarding $100,000.00 to Ms. Murdice [sic] Guilbeau's family for her pain and suffering for the two months prior to her death from a fractured clavicle and hairline fracture of the pubic ramus, which did not require surgery, given Ms. Guilbeau's extremely poor health condition prior to the accident.

3

2.    The trial court erred in making any award for a loss of chance of survival when no medical testimony was submitted that established any loss of a chance by Ms. Guilbeau, and further, the medical testimony submitted did not correlate any relationship of the injuries to the death.

3.    The trial court erred in awarding the full-billed amount of the medical bills from the providers after the accident when the plaintiff did not actually pay any of the bills and Medicare paid a greatly reduced amount. Further, the trial court made awards for ordinary nursing home care, which would have been incurred regardless whether or not Ms. Guilbeau had been injured.

4.    The trial court erred in awarding the full 1/3 contingency fee on the total award given the fact that liability was stipulated to and the trial proceeded on the issue of damages taking only four hours to try.

5.    The trial court erred by awarding the full amount of damages when only four of five of the plaintiff's minor [sic] children filed suit.

**Discussion**

*Amended Judgment*

The LPCF asserts that the provision in the June 13, 2005 amended judgment recognizing Bayou Chateau's $100,000.00 limitation of liability under the Medical Malpractice Act substantively alters the original judgment. It seeks recognition of the judgment as an absolute nullity. Bayou Chateau asserts that the amendment reflects a provision erroneously omitted from the original judgment and is limited to a change in the judgment's phraseology. The plaintiffs also assert that the amended judgment did not substantively change the judgment as "said amended judgment was intended to limit the liability of Bayou Chateau for damages resulting from malpractice under the Medical Malpractice Act and not to the entire award or to damages arising under the NHRBR Act for nonmalpractice acts." The plaintiffs further note that "[t]he status of Bayou Chateau as a 'qualified health care provider' was never in dispute[,]"

4

and that "Bayou Chateau's liability for damages arising under the Louisiana Malpractice Act is limited by statute."

Louisiana Code of Civil Procedure Article 1951, entitled "Amendment of judgment," provides that:

> A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
>
> (1)  To alter the phraseology of the judgment, but not the substance; or
>
> (2)  To correct errors of calculation.

In *Bourgeois v. Kost*, 02-2785, pp. 7-8 (La. 5/20/03), 846 So.2d 692, 696 (citations omitted), the Louisiana Supreme Court remarked that:

> It is well settled under our jurisprudence that a judgment which has been signed cannot be altered, amended, or revised by the judge who rendered the same, except in the manner provided by law. The trial judge cannot, on his own motion or on the motion of any party, change a judgment which has been so signed, notwithstanding it was signed in error. Without a specific statutory grant of authority, the trial court is limited to the general authorization for amending final judgments provided in Code of Civil Procedure Article 1951. As stated above, Article 1951 limits the amendment of judgments to the correction of errors in calculation and alteration of phraseology, but does not authorize a trial court to make substantive amendments to final judgments. Courts have uniformly held substantive amendments to judgments made without recourse to the proper procedures, i.e. by way of a timely motion for a new trial or by appeal, to be absolute nullities.

In this case, the revision sought was not, at that time, pursued through a timely motion for new trial or by appeal. Nor does the record[2] indicate that the parties consented to the change. *See Villaume v. Villaume*, 363 So.2d 448 (La.1978). Rather, the record contains the original judgment of May 31, 2005 and the amended judgment of June 13, 2005, with no explanation for the amendment. Comparison of

---

[2] Although Bayou Chateau's brief to this court references the parties' agreement to the amendment, the record contains no such evidence.

5

these two judgments reveals the substantive nature of the amendment, one which does not fit within the exceptions of La.Code Civ.P. art. 1951(1) and (2).

In addition to the provisions of the original judgment, the amended version includes a provision stating that: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that as a Qualified Healthcare Provider, the liability of Bayou Chateau Nursing Center, Inc. is limited by the Medical Malpractice Act to ONE HUNDRED THOUSAND No/100 DOLLARS ($100,000.00.), plus legal interest in accordance with La.R.S. 40:1299.42 from January 10, 2003 until paid." This determination as to Bayou Chateau's status as a qualified healthcare provider and the related statement as to limitation of liability is clearly substantive insofar as these inclusions add to or take away from the original judgment. Accordingly, the erroneously amended judgment of June 13, 2005 is absolutely null and is hereby vacated. We focus, then, on the judgment of May 31, 2005.

*Liability for Attorney's Fees*

The LPCF asserts that the limitation of liability inserted into the amended judgment rendered it liable for the attorney's fees awarded by the trial court for violations of the Nursing Home Residents' Bill of Rights. It argues that, pursuant to La.R.S. 40:1299.41(I), it is only liable for "malpractice," and that Nursing Home Residents' Bill of Rights violations are not included within this term. The LPCF contends that reinstatement of the original judgment renders this assignment moot. Conversely, in its appeal, Bayou Chateau argues that the LPCF is liable for the attorney's fees awarded under the Nursing Home Residents' Bill of Rights. It asks that this court amend the original judgment to indicate that it is a Qualified Health Care provider and that its liability is limited to the first $100,000.00 of the damages

6

arising from the malpractice claim. We address this issue to resolve the question of whether the LPCF is liable for the attorney's fees awarded for the violation of the Nursing Home Residents' Bill of Rights.

First, we conclude that it was error for the trial court to fail to include language in the original judgment indicating that Bayou Chateau is a Qualified Health Care Provider and that, as such, it is not liable for an amount in excess of one hundred thousand dollars plus interest for damages arising from the malpractice claim. *See* La.R.S. 40:1299.42. We amend the judgment accordingly.

We further amend the judgment to reflect that the LPCF is not liable for attorney's fees awarded pursuant to the Nursing Home Residents' Bill of Rights. Specifically, the LPCF and the limitation of liability for Qualified Health Care Providers are creations of the Medical Malpractice Act. *See* La.R.S. 40:1299.41, *et seq.*. Reference to the provisions within the relevant statutory scheme indicate that both the limitation of liability and the LPCF exist within the confines of the Medical Malpractice Act. For instance, La.R.S. 40:1299.42(B)(2) indicates that "A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for *all malpractice[3] claims* because of injuries to or death of any one patient." (Emphasis

---

[3] "Malpractice" is defined within the Act as:

[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

La.R.S. 40:1299.41(A)(8).

added.) *See also Sewell v. Doctors Hosp.*, 600 So.2d 577 (La.1992).[4] Furthermore,

in establishing the LPCF, La.R.S. 40:1299.44(A)(1), provides that:

> The state recognizes and acknowledges that the fund and any income from it are not public monies, but rather are private monies which shall be held in trust as a custodial fund by the state for *the use, benefit, and protection of medical malpractice claimants* and the fund's private health care provider members, and all of such funds and income earned from investing the private monies comprising the corpus of this fund shall be subject to use and disposition only as provided by this Section.

(Emphasis added).

In this case, the trial court recognized malpractice and violations of the Nursing

Home Residents' Bill of Rights. However, its award of attorney's fees stems from

the Nursing Home Residents' Bill of Rights. *See* La.R.S. 40:2010.9.[5] No such

---

[4] In *Sewell*, 600 So.2d at 578 (emphasis added) (footnote omitted), the supreme court remarked that:

> The principal purpose of the Medical Malpractice Act is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patients Compensation Fund. As long as a health care provider remains qualified under the Act, the health care provider and his insurer *are liable for malpractice only to the extent provided in the Act.* La.Rev.Stat. 40:1299.45 A.

> The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. *As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.*

[5] At the time of the events at issue, La.R.S. 40:2010.9 provided:

> A. Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual damages for any deprivation or infringement on the rights of a resident. *Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees*, costs of the action, and damages, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.

> B. The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies.

(Emphasis added.)

8

provision is contained within the Medical Malpractice Act. In *Smith v. State, Dep't of Transp. & Dev.,* 04-1317, p. 17 (La. 3/11/05), 899 So.2d 516, 527, the supreme court reiterated "that attorney fees are not allowed except where authorized by contract or statute." Given the fact that the LPCF is created and is operated within the guidelines of the Medical Malpractice Act and that the statutory scheme makes no provision for attorney's fees, we conclude that the LPCF is not responsible for the attorney's fees awarded pursuant to the Nursing Home Residents' Bill of Rights. Again, the judgment is amended below to reflect this determination.

*Survival Action Damages - Virile Shares*

Next, the LPCF and Bayou Chateau point out that the plaintiffs are only four of Ms. Guilbeau's five children. The LPCF and Bayou Chateau contend that the trial court's $100,000.00 award for survival action damages did not account for the remaining child's virile share and that the four plaintiffs were not entitled to recover the remaining child's share. They assert that the survival action damages should be reduced by one-fifth.

With regard to a survival action, La.Civ.Code art. 2315.1 provides, in part, that:

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
>
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

Article 1788 instructs that "[w]hen one obligor owes just one performance intended for the common benefit of different obligees, neither of whom is entitled to the whole performance, the obligation is joint for the obligees." Further, in the event a joint obligation is divisible, "each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion." La.Civ.Code art. 1789. *See also Gibbs v.*

9

*Magnolia Living Center, Inc.*, 38,184, p. 6 (La.App. 2 Cir. 4/7/04), 870 So.2d 1111, 1115, *writ denied*, 04-1148 (La. 7/2/04), 877 So.2d 146 (wherein the second circuit observed that a tortfeasor's obligation to pay for the damages experienced by the victim prior to his or her death represents a single performance owed to all "survival beneficiaries and is therefore a joint obligation for the obligees. Any judgment for the payment of money damages is a divisible obligation. La. C.C. art. 1815").

The record does not indicate that the trial court failed to take into consideration that only four of Ms. Guilbeau's five children brought suit. Rather, the trial court was aware that Ms. Guilbeau had five children as each of them testified. Furthermore, in reasons for ruling, the trial court observed that "Plaintiffs, four of the children of Murdis Guilbeau, have instituted this action seeking general damages as survivors of Murdis Guilbeau for her pain and suffering from the time of injury until her death …." Neither does the quantum awarded in this regard necessarily signal that the trial court included the nonparticipating child's virile share in the award. In short, the record fails to establish that the trial court erred in fashioning its award for the survival action.

*Survival Action - Quantum*

The LPCF and Bayou Chateau question the quantum of the general damages awarded for the survival action. Both reference the trial court's consideration of *Thibodeaux v. Stonebridge, LLC*, 03-1256 (La.App. 5 Cir. 4/27/04), 873 So.2d 755, a case they assert involved more grievous injuries than those suffered by Ms. Guilbeau. They point out that Ms. Guilbeau was eighty-five years of age at the time of the fall in question, that she was suffering from Alzheimer's and dementia at that time, and that the duration of her injury was only two months rather than the two years of recovery involved in *Thibodeaux*.

The trial court's reasons for ruling reveal its consideration of *Thibodeaux*, as well as the following factual determinations which are relevant to our review:

> As a result of [Ms. Guilbeau's] fall she sustained a fractured clavicle and a fracture to her left pelvic inferior pubic ramus. The testimony is undisputed that these injuries caused severe and continuous pain to Ms. Guilbeau. This was confirmed not only through the testimony of her children, but also through a review of the medical records where it is continuously noted that she is in pain and discomfort.

> Further, Dr. E.J. Kalifey testified that, considering the age of Ms. Guilbeau and the type of injury, that she would not have healed by the time of her death. Dr. Kalifey testified that this type of injury is painful for months, speaking of both fractures. This continuous pain is also reflected in the need for Ms. Guilbeau to be referred to a hospital on November 16, 2002 for pelvic pain. Dr. Kalifey confirmed that any movement would be painful to an individual of Ms. Guilbeau's age and with those type [of] injuries.

> Additionally, this Court does find that the evidence proves, more probable than not, that the injuries sustained by Ms. Guilbeau did have a serious, immediate and lasting effect upon her. Ms. Guilbeau was definitely a different person after the accident. This was confirmed through the uncontradicted testimony of her children who related that her mobility, ability to eat, ability to speak and understand, and all other facets of her life diminished immediately after the accident. Further, the photographs introduced into evidence clearly reflect a different individual from the June 8, 2002 photographs introduced into evidence, which photographs were taken a couple of days after the injury. Ms. Guilbeau aged tremendously after the accident. After the accident she could not use her wheelchair and was therefore immobile. The pelvic pain required bed rest. She would moan constantly.

> . . . .

> Considering the testimony of all witnesses, expert and non-expert, as to the continued state of pain in which Ms. Guilbeau was in once she began to receive treatment, it makes one shudder to consider what type of pain she was actually in for the first two days, wherein no treatment was provided.

> . . . .

> Therefore, and without question, Ms. Guilbeau sustained a very serious fracture to the clavicle and left pelvic inferior pubic ramus, which produced constant and severe pain for the two months from the time of injury to the time of her death. As her survivors, her children are entitled to recover for this extreme pain and suffering, and for this survival action the Court awards the sum of $100,000.00[.]

In reviewing an award of general damages, we are mindful of the supreme court's instruction that:

> [T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993). Only upon a finding of an abuse of discretion is reference to previous awards appropriate and then only for determination of the highest/lowest awards that were within the trial court's discretion. *Cone v. Nat'l Emergency Serv., Inc.*, 99-0934 (La.10/29/99), 747 So.2d 1085.

Although the trial court utilized a previous award in shaping the general damages, our review does not require such a consideration as the evidence reveals no abuse of discretion in the $100,000.00 award. Certainly Ms. Guilbeau suffered from poor health prior to her fall. However, Ms. Guilbeau's fall resulted in two fractures which required hospitalization, an increase in medical supervision and attention, and the need for pain medication. Furthermore, the testimony supported a determination that Ms. Guilbeau's mobility was significantly decreased, that she was more dependant on her caretakers, and that her ability to communicate was diminished. Her condition was such that physical therapy, occupational therapy, and speech therapy were attempted. The plaintiffs testified as to their perception of Ms. Guilbeau's pain level and the fact that therapy was problematic due to her pain level. The trial court was also aware of the plaintiffs' assertion that Ms. Guilbeau's mental capacity was diminished after the accident.

Given the above evidence, we find no abuse of discretion in the trial court's award of $100,000.00 in general damages for the survival action. This assignment lacks merit.

*Loss of Chance of Survival and Acceleration of Death*

Noting difficulty in the plaintiffs' wrongful death claim, the trial court awarded $50,000.00 for what it termed causation of a "more rapid demise." The judgment styles the award as one for "loss of chance of survival and acceleration of death." The LPCF and Bayou Chateau question the award, arguing that the plaintiffs failed to produce evidence linking Ms. Guilbeau's injuries and her subsequent death.

With regard to this award, the trial court explained:

> The issue of the wrongful death claim is somewhat more difficult to determine. This is due to the fact that there is no medical evidence to indicate that the injuries sustained in the subject accident caused the death of Ms. Guilbeau. In fact, plaintiffs admit that the injuries did not cause her death. Plaintiff's [sic] claim that the injuries caused her Alzheimers and Dementia to progress more rapidly and therefore caused an earlier death than should have occurred.
>
> Dr. Kalifey testified that the injury did not speed up the Dementia. However, we must recall that Dr. Kalifey did not examine Ms. Guilbeau. Dr. Dial also did not confirm that the injuries caused a more rapid deterioration of Ms. Guilbeau's condition. However, Dr. Dial did not see Ms. Guilbeau prior to the accident, only seeing her approximately three to four weeks after the accident.
>
> Louisiana Law requires that a party asserting a claim proves same by a preponderance of the evidence - - - that meaning, proving their claim to be more probable than not. In the case at bar the records introduced into evidence clearly show a notation in the Bayou Chateau records on September 26, 2002 that the condition of Ms. Guilbeau was deteriorating rapidly. This was also confirmed by testimony of her children as to her condition prior to the fall. After the fall, however, this deterioration, more probable than not, did accelerate. Although her death was not caused by the injuries, the evidence does prove more probable than not that the injuries caused her physical condition to be so painful that it diminished her appetite, diminished her mobility, diminished her communication, and as a result necessarily caused a more rapid demise. This Court does not find that Bayou Chateau wrongfully caused the death of Ms. Guilbeau. However, this Court does find that the negligence of the employees of Bayou Chateau did cause

injury to Ms. Guilbeau and that these injuries caused a more rapid demise, and damages in the amount of $50,000.00 are awarded accordingly.

With regard to the necessity of the plaintiff proving causation when alleging loss of chance of survival, the Louisiana Supreme Court has instructed, that:

> We have previously explained that to establish causation in a situation where the patient dies, the plaintiff need only prove that the defendant's malpractice resulted in the patient's loss of a chance of survival, and that the plaintiff need not shoulder the "unreasonable burden" of proving that the patient would have survived if properly treated. We have also consistently held that causation is a factual finding which should not be reversed on appeal absent manifest error.

*Martin v. East Jefferson Gen. Hosp.*, 582 So.2d 1272, 1278 (La.1991) (citations omitted). Here, the record reveals manifest error in the trial court's determination that the evidence established loss of chance of survival.

As addressed above, the record supports the finding that the fall caused serious injury to Ms. Guilbeau and that her condition deteriorated as a result. These factors were appropriately considered in the general damages award. However, the record lacks evidence of the second component necessary for this award, *i.e.*, that the injury caused or accelerated her death or that the injury resulted in a loss of chance of survival. At most, the record reveals the plaintiffs' testimony regarding the deterioration of their mother's condition after her fall. Again, this was considered in the general damages award.

In contrast to the finding as to causation, Dr. Daniel Dial, Ms. Guilbeau's physician at the time she resided at the Baton Rouge Health Care Center, explained that he felt that the primary cause of death was "Alzheimer's dementia[,]" and that any secondary cause was "[d]ysphasia secondary to all Alzheimer's dementia." He further testified as to his uncertainty as to whether the fractures contributed to Ms.

14

Guilbeau's demise, given the underlying Alzheimer's and the progression associated with that disease.

The record also contains the Medical Review Panel's findings, which include its determination that: "The panel is further of the opinion that the breach in the standard of care was a factor in the resulting fracture of her left clavicle and the fracture of the pelvic inferior pubic rumes, but was not a factor in her subsequent death." Dr. Edmund Kalifey, a member of the Medical Review Panel, testified as to the panel's findings. After referencing Ms. Guilbeau's condition prior to the fall, he stated that "it was felt that her injuries weren't life threatening and with her, from what we gathered, her downhill course or deterioration we felt that most likely that this would have - you know, she would have died regardless of her injuries in this type of fashion."

In short, the record lacks evidence to support the trial court's determination as to causation and the resulting award for loss of chance of survival. Accordingly, the $50,000.00 award for "loss of chance of survival and acceleration of death" is reversed.

*Medical Expenses*

The trial court awarded $41,612.62 in medical special damages. This figure includes costs associated with Ms. Guilbeau's stay at the Baton Rouge Health Care Center after her fall. Bayou Chateau questions the award, asserting that the figure does not reflect "the amount that was actually paid by Medicare." They argue that, the supreme court's decision in *Bozeman v. State*, 03-1016 (La. 7/2/04), 879 So.2d 692, a case involving recovery for payments made by Medicaid, should be made applicable to the present matter. It contends that, otherwise, the award "results in a windfall to the plaintiffs, who are the heirs of the original plaintiff, and whose

15

patrimony was not diminished." Furthermore, Bayou Chateau questions the award of the full costs incurred in Ms. Guilbeau's nursing home stay as necessitated by the accident when, as a longstanding nursing home resident, she would have incurred these costs regardless of the fall.

The trial court briefly addressed the medical expenses in its reasons for ruling, explaining:

> Plaintiffs also allege that they are entitled to medical specials total[]ing $41,612.62. Of this amount, approximately $32,000.00 consists of charges incurred at Baton Rouge Health Center, a nursing facility with specialized care. A review of the medical records at this facility reflects that all of the treatment and/or attempted treatment provided to Ms. Guilbeau was medically necessary as a result of the injuries sustained in her fall and/or a result of the more rapid deterioration of her Alzheimers and Dementia. As a result Bayou Chateau is responsible for complete reimbursement of this amount.

Insofar as Bayou Chateau contends that Ms. Guilbeau's medical expenses were paid by Medicare, we note that this case is not one controlled by *Bozeman*, 879 So.2d at 705-06, a case in which the supreme court explained that: "Medicaid recipients are unable to collect the Medicaid "write-off" amounts as damages because no consideration is provided for the benefit. Thus, plaintiff's recovery is limited to what was paid by Medicaid." The supreme court further remarked that: "However, in those instances, where plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the 'write-off' amount." *Id*. at 706. In reaching its decision in *Bozeman*, the supreme court specifically noted the difference in Medicaid payments, and those from Medicare and private insurance. The latter payment methods require contribution from the recipient. Extension of the policy determination contained within *Bozeman*

16

as urged by Bayou Chateau, is not a question properly reconsidered by this court. This argument lacks merit.

Neither do we find that the trial court's award for medical expenses requires amendment for nursing home expenses that Ms. Guilbeau would have incurred but for the accident. While such a consideration could have been appropriate, the evidence is lacking as to the costs associated with residence at Bayou Chateau. Instead, the record supports the trial court's determination that, after the fall, Ms. Guilbeau required a higher level of care and that the injuries necessitated therapy, a cost included within the award. This argument lacks merit.

*Attorney's Fees - Quantum*

Finally, Bayou Chateau contests the trial court's award of attorney's fees to the plaintiffs in the amount of their one-third contingency fee. It contends that, pursuant to La.R.S. 40:2010.9, the plaintiffs are only entitled to recover "reasonable attorneys fees" for violation of the Nursing Home Residents' Bill of Rights and that one-third of the total award is not reasonable in this case as liability was established. Bayou Chateau also argues that the one-third recovery relates to the full case, including the malpractice claim, and is not limited to the bill of rights' claim. Bayou Chateau urges this court to consider the factors set forth by the supreme court in *City of Baton Rouge v. Stauffer Chemical Co.*, 500 So.2d 397 (La.1987) in considering the reasonableness of the award.

Having reviewed this matter, we find no abuse of discretion in the trial court's determination that the one-third contingency fee arrangement entered into by the plaintiffs and their counsel is instructive of a reasonable attorney's fee in this case. We reach this conclusion after consideration of the factors set forth in *Smith*, 899

17

So.2d 516,[6] wherein the supreme court reiterated considerations to be entertained by the court in determining the reasonableness of a fee, even those authorized by statute. In this case, the plaintiffs' counsel assumed financial responsibility of the matter, filed suit, gathered relevant medical evidence, skillfully presented his arguments to the court, and successfully obtained recovery under the Nursing Home Residents' Bill of Rights. The fact that much of this same evidence was used for the plaintiffs' malpractice claim is of no moment as the intertwined nature of the claims required much of the same evidence, research, and argument. Furthermore, recovery based on a contingency contract in a Nursing Home Residents' Bill of Rights case was specifically approved in *Thibodeaux*, 873 So.2d 755. *See also Short v. Plantation Mgmt. Corp.,* 99-899 (La.App. 1 Cir. 12/27/00), 781 So.2d 46.

This assignment lacks merit.

---

[6] The supreme court explained:

> It is well settled that courts may inquire into the reasonableness of attorney fees as part of their inherent authority to regulate the practice of law, "[r]egardless of the language of the statutory authorization for an award of attorney fees or the method employed by the trial court in making an award of attorney fees."*Rivet v. State, Dept. of Transp. and Dev.*, 96-0145, p. 11 (La.9/5/96), 680 So.2d 1154, 1161. In *State, Department of Transportation and Development v. Williamson*, 597 So.2d 439, 442 (La.1992), this court set forth those factors to be taken into consideration in determining the reasonableness of attorney fees as follows: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. These factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which guide the legal profession in setting reasonable attorney fees based on skill, prevailing charges, time involved, relationship, and others. *Rivet* at p. 12, 680 So.2d at 1161-62.

*Smith*, 899 So.2d at 527-28.

**DECREE**

For the foregoing reasons, the amended judgment of June 13, 2005 is vacated as an absolute nullity. The original judgment of May 31, 2005 is reinstated and, consistent with the above reasons, is amended to include the following language:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that as a Qualified Health Care Provider, Bayou Chateau Nursing Center, Inc. is not liable for an amount in excess of one hundred thousand dollars plus interest for damages arising from the malpractice claim.

That portion of the original judgment awarding attorney's fees is amended to include the following sentence: "The Louisiana Patient's Compensation Fund is not liable for the attorney's fees award as it is made pursuant to the Nursing Home Residents' Bill of Rights." The trial court's $50,000.00 award for "loss of chance of survival and acceleration of death damages" is reversed, and the judgment is amended to reflect the deletion of that award. In all other respects, the judgment is affirmed as amended. Costs of this proceeding are assessed equally to the plaintiffs, Bayou Chateau Nursing Center, Inc., and the Louisiana Patient's Compensation Fund.

**AMENDED JUDGMENT VACATED. ORIGINAL JUDGMENT REVERSED IN PART AND AFFIRMED IN PART AS AMENDED.**

**ROBERT NEIL GUILBEAU, BERNICE GUILBEAU KIMBALL, CHARLENE GUILBEAU WILKINSON AND EARL JAMES GUILBEAU**

**VERSUS**

**BAYOU CHATEAU NURSING HOME, INC. & LOUISIANA PATIENTS COMPENSATION FUND**

Painter, J., dissenting in part.

While I agree with much of the majority's opinion herein, I would affirm the trial court's award for lost chance of survival.

The record on appeal shows a more rapid deterioration of Mrs. Guilbeau's condition after the injury than before. While Mrs. Guilbeau was elderly and suffering from Alzheimer's disease, the record shows that she was able to enjoy many of the normal functions of life, and nothing of record suggests that she was near death prior to her injury. After the injury, her condition declined dramatically, and within three months after the injury she was dead. After hearing the evidence, the trial court stated in reasons for judgment: "Although her death was not caused by the injuries, the evidence does prove more probable than not that the injuries caused her physical condition to be so painful that it diminished her appetite, diminished her mobility, diminished her communication, and as a result necessarily caused a more rapid demise." The trial court's determination that Ms. Guilbeau lost a chance of survival is supported by a reading of the record as a whole, and I would affirm that determination, finding no manifest error. Accordingly, I respectfully dissent from the majority's decision to reverse the judgment of the trial court awarding damages for lost chance of survival.