STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 07-101


CURTIS RANDALL

VERSUS

CONCORDIA NURSING HOME D/B/A CAMELOT LEISURE LIVING


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 39528
HONORABLE LEO BOOTHE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**JOHN D. SAUNDERS
JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED AS AMENDED.**

**James Brewster Gardner**
**Lunn, Irion, Salley, Carlisle, & Gardner**
**P. O. Box 1534**
**Shreveport, LA 71165-1534**
**(318) 222-0662**
**Counsel for Defendant/Appellant:**
**Concordia Nursing Home**

**John Sturgeon**
**Sturgeon & Boyd**
**P. O. Drawer 1463**
**Ferriday, LA 71334**
**(318) 757-4151**
**Counsel for Defendant/Appellant:**
**Concordia Nursing Home**

**Kimberly A. Ramsey**
**Nix, Patterson & Roach**
**401 Edwards St., Suite 820**
**Shreveport, LA 71101**
**(318) 425-9255**
**Counsel for Plaintiff/Appellee:**
**Curtis Randall**

**SAUNDERS, Judge.**

This is a nursing home neglect and medical malpractice case brought by a plaintiff child, individually, and on behalf of his deceased mother. Through a petition and one supplement to that petition, the plaintiff brought an action against the nursing home under the Louisiana Nursing Home Resident's Bill of Rights (hereinafter "NHRBR") and, after a Medical Review Panel issued its findings, under the Louisiana Medical Malpractice statutes.

The plaintiff then dismissed his medical malpractice action and specifically reserved his NHRBR action. In response, the nursing home filed Peremptory Exceptions of No Right of Action, No Cause of Action and Prescription. The trial court denied these exceptions. The nursing home also filed a Motion in Limine to limit the evidence the plaintiff could submit to that which was from one year prior to his filing suit. This motion was also denied.

After a jury trial, the plaintiff was awarded $150,000.00 in damages for the loss of his mother's dignity while she was a resident of the nursing home. The nursing home appealed the verdict, alleging six assignments of error. The plaintiff answered the appeal and requested additional attorney's fees for work performed on the appeal.

We affirm the trial judge on all assignments alleging his error. Further, we find no abuse of discretion by the jury in finding that the decedent suffered damages under the Louisiana NHRBR, nor do we find any error in the jury's failure to reduce the plaintiff's award by two-thirds based on the number of beneficiaries in the class that can recover for decedent's damages. We find that the jury's award of $150,000.00 to the plaintiff for his virile share of decedent's damages was abusively high and amend that award to $100,000.00. We award the plaintiff $5,000 in additional attorney's fees for all work performed on this appeal. All costs of this appeal are assessed to the

nursing home.

**FACTS AND PROCEDURAL HISTORY:**

On March 18, 2004, Curtis Randall (hereinafter "Plaintiff") individually and on behalf of the unopened succession of Francine Inez Randall (hereinafter "Mrs. Randall"), filed suit against Concordia Nursing Home, Inc. d/b/a Camelot Leisure Living (hereinafter "Camelot"). In his petition, Plaintiff alleged violations of Mrs. Randall's rights as guaranteed to her under the Louisiana NHRBR. In addition, Plaintiff filed a letter of complaint with the Patients' Compensation Fund, pursuant to La.R.S. 40:1209.47, *et.seq.*

Plaintiff alleged in his original petition that from January 1996 through August 12, 2003, the date of his mother's death, that his mother, as a resident at Camelot, was maltreated and her rights were violated under the Louisiana NHRBR. Subsequent to the Medical Review Panel reaching its findings, Plaintiff amended his petition to add his medical malpractice action to his NHRBR action against Camelot.

Plaintiff then moved for a voluntary dismissal of his medical malpractice action against Camelot on June 23, 2006. Plaintiff's motion for voluntary dismissal was granted on June 28, 2006.

Once Plaintiff's motion for voluntary dismissal was granted, Camelot filed Peremptory Exceptions of No Cause of Action, No Right of Action, and Prescription. Further, Camelot filed a Motion in Limine requesting that the trial court limit Plaintiff's evidence to the period of one year prior to suit being filed. The trial court denied all of Camelot's peremptory exceptions and also denied its Motion in Limine.

Following an August 16, 2006, jury trial on the merits, the jury returned a verdict that Camelot had violated Mrs. Randall's rights under the Louisiana NHRBR

2

as she suffered a loss of dignity. The verdict awarded Plaintiff $150,000.00 in damages. Camelot appealed the trial court's rulings regarding its Peremptory Exceptions of No Right of Action and Prescription, its Motion in Limine, and the jury's verdict, asserting six total assignments of error. Plaintiff answered Camelot's appeal requesting additional attorney fees for all work performed on the appeal.

We affirm the trial court on its finding that Camelot's Peremptory Exception of No Right of Action and Prescription lacked merit. We also affirm the trial court on its finding that Camelot's Motion in Limine lacked merit. We find no abuse of discretion by the jury in finding that Mrs. Randall suffered damages under the Louisiana NHRBR, nor do we find any error in the jury's failure to reduce Plaintiff's award by two-thirds based on the number of beneficiaries in the class that can recover for Mrs. Randall's damages. We find the jury's award of $150,000.00 to Plaintiff for his virile share of Mrs. Randall's damages was abusively high and amend that award to $100,000.00. We also affirm the trial court's allowance for Plaintiff to recover money damages from Camelot despite our Legislature's August 15, 2003, amendment to La.R.S. 40:2010.9 based upon the continuing tort doctrine. Finally, we award Plaintiff $5,000 in additional attorney's fees for all work performed on this appeal. All costs of this appeal are assessed to Camelot.

**ASSIGNMENTS OF ERROR:**

1. Did the trial court err in denying Camelot's Peremptory Exception of No Right of Action in light of Plaintiff's prior dismissal of his medical malpractice action?

2. Did the trial court err in denying Camelot's Peremptory Exception of Prescription, and in denying its Motion in Limine to limit the evidence Plaintiff could submit to that which took place one year prior to filing suit?

3. Did the jury err in holding that the decedent, Mrs. Randall, sustained any injury or damages under the Louisiana Nursing Home Bill of Rights, absent any

3

expert medical evidence and in the face of the opinions of four physicians that she received excellent care?

4.      Did the jury err in failing to reduce its award of $150,000.00 to Plaintiff by two-thirds as Mrs. Randall had two other children that could recover damages on her behalf?

5.      Did the jury err by excessively awarding $150,000.00 to Plaintiff?

6.      Did the trial court err in failing to apply the amendment of the Louisiana NHRBR effective August 15, 2003, to remove the damages remedy to Plaintiff's suit filed on March 18, 2004?

**ASSIGNMENT OF ERROR #1:**

Camelot argues that the trial court erred in denying its Peremptory Exception of No Right of Action in light of the plaintiff's prior dismissal of his medical malpractice action. This argument lacks merit.

Whether a plaintiff has a right of action is a question of law. *Mississippi Land Company v. S&A Properties II, Inc.*, 01-1623 (La.App. 3 Cir. 5/8/02), 817 So.2d 1200. An appellate court considers whether a trial court's ruling on an Exception of No Right of Action is legally correct via a *de novo* review. *Boyer v. Stric-Lan Cos. Corp.*, 04-872 (La.App. 3 Cir. 11/10/04), 888 So.2d 1037.

The burden of proving that a plaintiff has no right of action is on the movant. *State on behalf of Jones v. Mallet*, 97-611(La.App. 3 Cir. 12/17/97), 704 So.2d 958. The test for the application of the Peremptory Exception of No Right of Action is whether this plaintiff has the capacity or legal interest to enforce the rights asserted in the petition. This exception is a threshold device that terminates suits brought by one who cannot enforce the right asserted judicially. *Babineaux v. Pernie-Bailey Drilling Co.*, 262 So.2d 328 (La.1972). "The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in

4

the subject matter of the litigation." *Indus. Cos., Inc. v. Durbin*, 02-665, p.12 (La. 1/28/03), 837 So.2d 1207, 1216.

In the case before us, the plaintiff is a surviving child of the decedent, Mrs. Randall. In his supplemental petition, the plaintiff specifically plead the continuing tort doctrine and asserted claims on behalf of Mrs. Randall that she suffered damages due to the negligence of Camelot. The plaintiff alleged that due to chronic under staffing, Camelot violated Mrs. Randall's rights under the NHRBR including failing to provide privacy in meeting personal needs per La.R.S. 40:2010.8(A)(8); failing to treat Mrs. Randall courteously, fairly, and with the fullest measure of dignity per La.R.S. 40:2010.8(A)(9); failing to allow Mrs. Randall to be free from mental and physical abuse per La.R.S. 40:2010.8(10); and failing to allow Mrs. Randall to rise and retire in accordance with her reasonable requests per La.R.S. 40:2010.8(21). The plaintiff also asserted a cause of action for wrongful death under La.C.C. art. 2315.2 and a survival action under La.C.C. art. 2315.1, inclusive of a lost chance of survival.

Camelot argues that this plaintiff cannot bring this action under the NHRBR because the NHRBR specifically provides that an action under La.R.S. 40:2010.9 "may be brought by the resident or his curator, including a curator ad hoc," and the action in the case before us was not brought by either Mrs. Randall or her curator as required by the statute. While it is true that the plaintiff is neither Mrs. Randall nor her curator, it is also true that the plaintiff is a surviving child of Mrs. Randall and, as a surviving child of Mrs. Randall, if her claim under the NHRBR is heritable, then this plaintiff has the capacity or legal interest to enforce the rights asserted under the NHRBR in this petition.

Camelot contends that the claims asserted by this plaintiff under the NHRBR

are not heritable based upon two arguments. Camelot's first argument is that the allegations of violations of the NHRBR in the plaintiff's petition are not heritable because they are not related to medical treatment. Camelot cites *Short v. Plantation Management Corp.*, 99-899 (La.App. 1st Cir. 12/27/00), 781 So.2d 46, contending in its brief that "an alleged violation of the NHRBR should not be deemed heritable unless the alleged violation is related to medical treatment." Camelot's basis for this bright line rule is the following quote from *Short*, "[i]n this regard, violations of the provisions of the Resident's Bill of Rights law, *relating to medical treatment*, constitute an 'offense or quasi-offense.' As such they give rise to the application of La.C.C. art. 2315.1, and the right of a survival action." *Id* at 54. (Emphasis Camelot's).

Our reading of *Short* is that the First Circuit found that all claims asserted under the NHRBR are heritable. The rule as stated in *Short* is summed up in the sentence following the quote relied upon by Camelot, "[w]e thus conclude that the causes of action advanced pursuant to the Residents' Bill of Rights Law constitute heritable actions that can be asserted by a party's successor." *Short*, p.8, 781 So.2d at 54. We adopt this reading for *Short* because this court did not find any other case that can be interpreted to stand for the proposition put forth by Camelot. However, this court found several cases, including one decided by our own Louisiana Supreme Court, *Richard v. Louisiana Extended Care Centers, Inc.*, 02-978 (La. 1/14/03), 835 So.2d 460, that have found, either by implication or directly, that actions brought under the NHRBR are heritable regardless of whether the alleged violations are related to medical treatment.[1] As such, Camelot's first argument, that the allegations

[1]See *Pender v. Natchitoches Parish Hospital*, 01-1380 (La.App. 3 Cir. 5/15/02), 817 So.2d 1239; *Rachal v. Peters*, 28,655 (La.App. 2 Cir. 9/25/96), 680

of violations under the NHRBR in the plaintiff's petition are not heritable because they are not related to medical treatment, lacks merit.

Camelot's second argument is that the legislature never intended for claims asserted under the NHRBR to be heritable. We disagree.

On August 15, 2003, the legislature amended La.R.S. 40:2010.9 to eliminate civil enforcement via claims for actual money damages and instead provided for civil enforcement only via injunctive relief. Prior to August 15, 2003, La.R.S. 40:2010.9 stated:

> A.    Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights and *to recover actual damages for any deprivation or infringement on the rights of a resident*. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees, costs of the action and damages, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case, the court shall award the prevailing party his reasonable attorney fees.
>
> B.    The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies. (Emphasis added.)

After the legislature amended La.R.S. 40:2010.9 on August 15, 2003, it states, in pertinent part:

> A.    Any resident who alleges that his rights, as specified in R.S. 40:2010.8, have been deprived or infringed upon may assert a cause of action for injunctive relief against any nursing home or health care facility responsible for the alleged violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may

---

So.2d 1280; *Carl v. Naquin*, 93-1725 (La.App. 1 Cir. 5/20/94), 637 So.2d 736; *Schenck v. Living Centers-East, Inc.*, 94-2514 (E.D.La. 4/21/96), 917 F.Supp. 432; *Petre v. Living Centers-East, Inc.*, 94-1004 (E.D.La. 4/8/96), 935 F.Supp. 808.

be brought in any court of competent jurisdiction to enforce such rights or *to enjoin any deprivation or infringement on the right of a resident*. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney fees, and costs of the action, unless the court finds that the losing plaintiff has acted in bad faith which malicious purpose, and that there was absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees. (Emphasis added.)

Camelot contends that because the only remedy that the legislature made available in the current La.R.S. 40:2010.9 was that of injunctive relief, the legislature was indicating that it never intended any actions under the NHRBR to be heritable. This supposition is contrary to the legislative intent expressed in La.R.S. 40:2010.6.

Louisiana Revised Statute 40:2010.6 states, in pertinent part:

The legislature finds that persons residing within nursing homes are *isolated from the community and often lack the means to assert their rights as individual citizens*. The legislature further recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and some personal freedom. It is therefore the intent of the legislature to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing home residents' right to self-determination. (Emphasis added.)

Given these clear legislative findings that residents in nursing homes are in need of help to represent themselves as they "lack the means to assert their rights as individual citizens," Camelot's argument that the legislature never intended causes of action to be heritable under the NHRBR is counterintuitive.

Moreover, causes of action set out in the NHRBR have been held to be heritable since 1985, as established by *Richard*, 835 So.2d 460; *Short*, 781 So.2d 46; and those cases cited in Footnote 1. This jurisprudence has never been overturned legislatively or otherwise. The legislature had never intended for the causes of action in the NHRBR to be heritable, as Camelot argues, the August 15, 2003, amendment would have addressed whether causes of action under the NHRBR were heritable

8

rather than focus on the removal of recovery for actual money damages. As such, we find that Camelot's argument that the legislature never intended for causes of action asserted under the NHRBR to be heritable is also without merit.

Finally, Camelot argues that the plaintiff has no right of action because the negligence the plaintiff alleged in his petition is related to medical treatment, and should be considered part of his medical malpractice claim that he voluntarily dismissed when he filed a Motion and Order for Voluntary Partial Dismissal. Camelot contends that when the trial court signed an order stating, "IT IS HEREBY ORDERED that the Plaintiff's claims asserted under the Medical Malpractice Act are hereby dismissed, with prejudice, reserving Plaintiff's right to pursue the claim asserted under the Louisiana Nursing Home Residents' Bill of Rights," plaintiff waived any cause of action he had against it. This argument also lacks merit.

The plaintiff's petition clearly contains allegations that are not covered by the Medical Malpractice Act. In plaintiff's petition, he asserted claims on behalf of Mrs. Randall that she had suffered damages from being, "[l]eft to lie for hours at a time in dirty, soiled conditions from dried human waste." Further, the plaintiff asserted a claim on behalf of the decedent for a loss of dignity due to Camelot's "reckless disregard for the consequences of its actions caused staffing levels to be set at a level where personnel on duty at any given time could not reasonably tend to the basic life needs of the residents. . .."

In *Coleman v. Deno*, 00-1517 (La.1/25/02), 813 So.2d 303, our Louisiana Supreme Court used six factors to determine whether a claim is covered under the Medical Malpractice Act. Those six factors are:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert

9

medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.

The First Circuit and Second Circuit Courts of Appeal have dealt with these virtually identical allegations regarding failure to change adult diapers and bed linens. Using the six factors set out in *Coleman* above, both courts determined that this type of allegation does not require submission to a medical review panel and therefore is not part of a medical malpractice claim.[2]

We agree with our fellow circuits as is evidenced in *Quinney v. Summit of Alexandria*, 05-237 (La.App. 3 Cir. 6/1/05), 903 So.2d 1226. Using the six factors in *Coleman* we find no reason to find that the plaintiff's voluntary dismissal of any medical malpractice claims is inclusive of a claim for loss of dignity under the NHRBR based upon Camelot's chronic understaffing. Allegations that Camelot allowed Mrs. Randall to lie in her own waste and failed to change Mrs. Randall's linens are not "treatment related" or caused by a dereliction of professional skill, nor do the allegations require expert medical evidence to determine whether the appropriate standard of care was breached. As such, Camelot's contention that the plaintiff dismissed all of his remedies available when he voluntarily dismissed his

---

[2]See *Davis v. St. Francisville Country Manor, LLC*, 05-72 (La.App. 1 Cir. 2/10/06), 928 So.2d 549, *writ denied*, 06-604 (La. 5/26/06), 930 So.2d 25; *Womack v. Autumn Leaves Nursing & Rehabilitation Center, L.L.C.*, 39,710 (La.App. 2 Cir. 5/11/05), 902 So.2d 1280; *Rogers v. Hickory Manor Nursing & Rehabilitation, L.L.C.*, 39,626 (La.App 2 Cir. 5/11/05), 902 So.2d 1150; *Burks v. Christus Health Monroe*, 39,540 (La.App 2 Cir. 4/6/05), 899 So.2d 775, *writ denied*, 05/1184 (La. 11/28/05), 916 So.2d 146; *Henry v. West Monroe Guest House, Inc.*, 39,442 (La.App 2 Cir. 3/2/05), 895 So.2d 680, *writ denied*, 05-875 (La. 5/13/05), 902 So.2d 1032.

medical malpractice action is without merit.

Moreover, it is clear from the current version of La.R.S. 40:2010.9(B) that causes of action for money damages based upon other legal remedies, for example those based upon La.C.C. art 2315, are not barred. Louisiana Revised Statute 40:2010.9(B) states, " The remedies provided in this Section shall not be construed to restrict other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies." Given that the plaintiff's petition asserted a survival action and wrongful death action based upon La.C.C. art. 2315, and the plaintiff is a surviving child of the decedent, Mrs. Randall, we find no merit in the assertion that this plaintiff had no right of action against Camelot.

As such, Camelot's various contentions that the claims set forth in the plaintiff's petition provide him with no right of action are without merit. We affirm the trial court's denial of Camelot's Peremptory Exception of No Right of Action.

**ASSIGNMENT OF ERROR #2:**

Camelot argues that the trial court erred in denying its Peremptory Exception of Prescription. We disagree.

The exception of prescription is a peremptory exception. La.Code Civ.P art. 927(A)(1). The Peremptory Exception of Prescription may be brought by the defendant at any stage of the proceeding in the trial court prior to the submission of the case for a decision. La.Code Civ.P art. 928(B). "If the peremptory exception has been filed after the answer, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case. . . ." La.Code Civ.P art. 929(B). "When evidence is introduced and evaluated at the trial of a peremptory

11

exception, an appellate court must review the entire record to determine whether the trial court was manifestly erroneous with its factual conclusions" *Parker v. Buteau*, 99-519, p. 3 (La.App. 3 Cir. 10/13/99), 746 So.2d 127, 129.

"Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

Louisiana Revised Statute 40:2010.9(c) states:

Any claim brought pursuant to R.S. 40:2010.8 et seq. shall be filed in a court of competent jurisdiction within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including, but not limited to, minors, interdicts and all persons adjudicated to be incompetent of handling their own affairs.

The party alleging that a claim has prescribed ordinarily bears the burden of proof. However, when it appears that prescription has run from the face of the pleadings, the burden of proof then shifts to the party not asserting prescription to prove that prescription has been interrupted or suspended. *Younger v. Marshall Indus., Inc.*, 618 So. 2d 866 (La.1993).

"When the tortious conduct and the resulting damages continue, prescription does not begin until the conduct causing the damages is abated." *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La.1982). If a defendant's

12

conduct is continuous and it gives rise to damages successively occurring from day to day, then a continuing tort exists. When such a situation arises, prescription does not begin to run until the continuous, damage causing conduct ceases. *Coulon v. Witco Corp.*, 03-208 (La.App. 5 Cir. 5/28/03), 848 So.2d 135; *Wilson v. Hartzman*, 373 So.2d 204 (La.App. 4 Cir 1979), *writ denied*, 376 So.2d 961 (La.1979); *Craig v. Montelepre Realty Co.*, 252 La. 502, 211 So.2d 627 (La.1968).

The plaintiff alleged in his petition that the continuing tort doctrine applied to the case at bar. In his petition, the plaintiff alleged that Camelot's damaging conduct, chronic and continuous understaffing, led to day to day violations of Mrs. Randall's "right to be treated courteously, fairly and with the fullest measure of dignity," as guaranteed to her in the NHRBR.

Whether Mrs. Randall suffered due to the continuous understaffing at Camelot is a necessary finding to prove the allegation in the plaintiff's petition. This court must determine whether the trial court was "manifestly erroneous" or "clearly wrong" in its factual conclusions by looking at the entire record.

After throughly reviewing the record, we find that the trial court's determination regarding whether Camelot was continuously and habitually understaffed was not "manifestly erroneous" or "clearly wrong." The testimony of Sadie Dixon, an aide at Camelot while Mrs. Randall was a resident, was that she would find Mrs. Randall lying in dried bowel movements and urine in the mornings when she would come into work "two or three times a week." Ms. Dixon testified that Mrs. Randall was found in this condition because Camelot "didn't have enough people to help, you know, turn her or something like that. We [Camelot] didn't have enough people to help really do anything."

13

Ms. Dixon only worked four times a week. Ms. Dixon's testimony that Mrs. Randall was in this condition due to understaffing two or three times a week of the four days a week that she worked is evidence that Camelot was understaffed continuously.

Further, there is the testimony of Leah Ballard. Ms. Ballard was a CNA at Camelot while Mrs. Randall was a resident. She testified that "[u]sually, we [Camelot] were very short staffed. There was usually four people supposed to work the night shift and at least three or four times a week there was only two to three CNAs."

Finally, there is the testimony of Ms. Lakisha Washington. Ms. Washington was also a CNA at Camelot while Mrs. Randall was a resident. Ms. Washington testified that she also would find Mrs. Randall lying in dried bowel movement and dried urine "two to three times a week" when she would come into work in the mornings.

Camelot counters these testimonies that they were continually understaffed by pointing out that it was only cited twice for understaffing during the time that Mrs. Randall was a resident. Camelot's argument is greatly undermined, however, when, during Ms. Lakisha Washington's testimony, counsel for the plaintiff asked if the staffing would change when the State would come to Camelot and Ms. Washington replied, "[y]es, ma'am. We would have more help and department heads helping out more." Directly after this testimony, when asked what would happen once the State would leave, Ms. Washington replied, "[w]e'd go back to the way we was before they came."

Moreover, we note that if Camelot does not receive a citation for being

14

understaffed on one particular day, that does not mean that Camelot was properly staffed on that particular day, it simply means that the State was not aware of whether Camelot was understaffed that day.

While there was other testimony from management personnel that Camelot was not continuously understaffed, it is not this court's duty under the applicable standard of review to weigh the evidence, nor make any credibility determinations. As reflected by its ruling, the trial court chose to believe that Camelot was continuously understaffed. As noted above, there was a plethora of testimony that Camelot was understaffed on a regular basis. These testimonies create a reasonable basis for the trial court to have chosen to believe that the plaintiff proved what he needed to prove in order to overcome the presumption that his claims had prescribed. It was a reasonable finding that Camelot's continuous understaffing was damaging to Mrs. Randall on a day to day basis. As such, we cannot reverse the trial court for its reasonable determination and, therefore, affirm the trial court's denial of Camelot's Peremptory Exception of Prescription.

Camelot also argues in this assignment of error that the trial court erred in denying its Motion in Limine to limit the evidence the plaintiff could submit to those actions which occurred within one year of the plaintiff filing suit

A Motion in Limine is an evidentiary matter and great discretion is given to the trial court on its rulings on such evidentiary matters. *Heller v. Nobel Insurance Group*, 00-261 (La. 2/2/00), 753 So.2d 841; *Scott v. Dauterive Hosp. Corp.*, 02-1364 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, *writ denied*, 03-2005 (La. 10/31/03), 857 So.2d 487. As we noted above, there is ample evidence in the record to uphold the trial court's denial of Camelot's Motion in Limine.

**ASSIGNMENT OF ERROR #3:**

Next Camelot argues that the jury erred in holding that the decedent, Mrs. Randall, sustained any injury or damages under the Louisiana NHRBR, absent any expert medical evidence and in the face of the opinions of four physicians that she received excellent care. This argument is misguided.

In brief, when arguing the merits of this assignment of error, Camelot again contends that when Plaintiff filed a Motion and Order for Voluntary Partial Dismissal dismissing his medical malpractice claims, he also dismissed his NHRBR claims as they are "inherently subsumed" within Plaintiff's medical malpractice claims. We have already discussed the merits of this argument in Assignment of Error #1, and found it baseless.

Next Camelot contends that it was unreasonable for the jury to find that the damage suffered by Mrs. Randall was causally related to the fact that she was allowed to sit in her waste for prolonged periods of time. This argument is also without merit.

Plaintiff, on behalf of Mrs. Randall, was awarded by the jury for her loss of dignity. The jury found that her loss of dignity resulted from Camelot's chronic understaffing. Plaintiff did not need to put forth expert medical testimony to combat the testimony of four physicians in order to prove that Mrs. Randall suffered a loss of dignity; Plaintiff merely had to put forth evidence that Mrs. Randall suffered a loss of dignity due to Camelot's chronic understaffing. Plaintiff did this via the testimony of Sadie Dixon, Leah Ballard, Lakisha Washington and the plaintiff himself. Their testimonies, as discussed in Assignment of Error #2 above, provide the jury with ample evidence to find that Mrs. Randall sustained damages under the NHRBR due to her loss of personal dignity. Accordingly, we affirm the jury's determination that

16

Mrs. Randall did sustain injury and damages under the Louisiana NHRBR

**ASSIGNMENT OF ERROR #4:**

Camelot argues that the jury erred in awarding $150,000.00 to the plaintiff. Camelot contends the award should be reduce by two-thirds as Mrs. Randall had two other children besides the plaintiff and the plaintiff is only entitled to recover his virile share. We are convinced that Plaintiff is only entitled to recover his virile share.

Louisiana Civil Code Article 2315.1 provides, in part, that:

A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year for the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

Louisiana Civil Code Article 1788 states that, "[w]hen an obligor owes just one performance intended for the common benefit of different obligees, neither of whom is entitled to the whole performance, the obligation is joint for the obligees."

Louisiana Civil Code Article 1815 states that, "[a]n obligation is divisible when the object of that performance is susceptible of division."

Louisiana Civil Code Article 1789 states, in pertinent part, "When a joint obligation is divisible, each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion."

In the case before us, Mrs. Randall's right to recover under La.R.S. 40:2010.9 for damages inflicted upon her by Camelot survived her death per La.Civ.Code art. 2315.1(A). This right to recover is bestowed upon her surviving three children as they are the highest ranking beneficiaries under La.Civ.Code art. 2315.1(A)(1). Included in this class of beneficiaries is Plaintiff. Camelot, the obligor, owes one performance, payment of damages to Mrs. Randall. This performance is intended under

La.Civ.Code art. 2315.1(A)(1) for the common benefit of different obligees, Mrs. Randall's three children. None of Mrs. Randall's children are entitled to the whole performance. Therefore, under La.Civ.Code art. 1788, Camelot's obligation to Mrs. Randall's children is a joint obligation.

The object of Camelot's performance, money damages, is susceptible of division; therefore, the obligation is divisible per La.Civ.Code art. 1815. Because the obligation owed by Camelot to Mrs. Randall's children is both divisible and joint, each joint obligee, one of which is Plaintiff, is entitled to recover only his share.

Because Plaintiff is only entitled to recover his virile share, Camelot argues that the $150,000.00 award should be reduced by two-thirds to Plaintiff's virile share. There is no evidence in the record that supports this argument.

Both Plaintiff and Camelot cite *Guilbeau v. Bayou Chateau Nursing Center*, 05-1131 (La.App. 3 Cir. 5/17/06), 930 So.2d 1167, *writ denied*, 06-1496 (La. 10/13/06), 939 So.2d 365. Much like the case before us, the *Guilbeau* case involved surviving children bringing a survival action on behalf of their mother for damages she suffered while in the care of a nursing facility. In *Guilbeau*, four of the decedent's five children brought an action that resulted in an award of $100,000.00. The defendants in *Guilbeau*, like Camelot here, argued that the trial court did not account for the remaining child's virile share and the award should be reduced accordingly. The *Guilbeau* court found that because the trial court was aware of the decedent's fifth child, and because there was no evidence that the trial court failed to take this fact into consideration when it made its award, there was no reason to adjust the award given at the trial level based upon a finding that the existence of other beneficiaries was not taken into account.

18

Here, it is also true that the finder of fact on the trial level was aware that the decedent, Mrs. Randall, had other children that were not a part of the case before them. Further like in *Guilbeau*, there is also no evidence in the record here that the jury failed to take this fact into consideration when it made its award. As such, this court, like the *Guilbeau* court, will not adjust the award based upon this argument.

**ASSIGNMENT OF ERROR #5:**

Camelot argues that the jury erred by excessively awarding $150,000.00 to Plaintiff. We agree.

This court, in *Guillot v. Doe*, 03-1754, p. 5-6 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, at 379-80, when discussing the correct procedure for reviewing damage awards, stated the following:

> An appellate court should rarely disturb an award of damages due to the great and, even, vast discretion vested in the trial court. We can disturb such awards, only, when the trial court clearly abused its discretion.
>
> Reasonable people often disagree over the appropriate measure of general damages in a particular case. Yet, "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award."
>
> We should not rely on a comparison of prior awards in cases with similar medical injuries to decide whether the trial court abused its discretion. "The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering." (Citations omitted.)

"The appropriate procedure for testing whether the jury abused its discretion is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the jury." *Schexnayder v. Carpenter*, 346 So.2d 196, 198 (La.1977).

If an abuse of discretion is found, the appellate court will only lower the award

to the highest (or raise the award to the lowest) point which is reasonably within the discretion afforded the court; the appellate court does not substitute its judgment for that of the trial court judge or jury in this situation. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

After reviewing the record, we find that the jury abused its discretion in making its award. Given our finding that the jury's award of $150,000.00 is the virile portion of Plaintiff in Assignment of Error #5, it would then follow that the jury believed the total damages suffered by Mrs. Randall to be $450,000.00. This is an unreasonable sum to this court. As such, we are called to lower the award to the highest point within a court's discretion given the facts of the case.

If we are to view the evidence in a light most favorable to Plaintiff, the dignity of Mrs. Randall was violated over a three year period. We find that the highest sum that Mrs. Randall could reasonably be awarded under the facts of this case is $300,000.00. Given that Plaintiff is one of three members of the class of beneficiaries, Mrs. Randall's children, Plaintiff is entitled to $100,000.00. Accordingly, we reduce the award to Plaintiff from $150,000.00 to $100,000.00.

**ASSIGNMENT OF ERROR #6:**

Camelot argues that the trial court erred in failing to apply the amendment of the Louisiana NHRBR, effective August 15, 2003, to remove the damages remedy to Plaintiff's suit filed on March 18, 2004. This argument lacks merit.

As discussed in Assignment of Error #2, the legislature amended La.R.S. 40:2010.9 effective August 15, 2003. Louisiana jurisprudence, which has not been overturned legislatively or otherwise, has found that the August 15, 2003, amendment

20

is not retroactive.[3] The plaintiff alleged incidents of negligence that occurred prior the August 15, 2003, amendment. We upheld the trial court's findings in Assignment of Error #2 that those prior incidents of negligence were not prescribed due to the continuing tort doctrine. Therefore, the plaintiff was entitled to recover actual money damages under the NHRBR for acts that he alleged occurred prior to the August 15, 2003, amendment. As such, Camelot's contention is without merit and we affirm the trial court's award of actual money damages under the NHRBR.

**ANSWER TO APPEAL:**

Plaintiff answered Camelot's appeal requesting additional attorney's fees for work performed on this appeal under La.R.S. 40:2010.9. We grant this request.

Our review of the record convinces us that an additional award of $5,000 is warranted for appellate work performed by Plaintiff's counsel.

**CONCLUSION:**

Camelot asserts six assignments of error. We affirm the trial court on its finding that Camelot's Peremptory Exceptions of No Right of Action and Prescription lacked merit. We also affirm the trial court on its finding that Camelot's Motion in Limine lacked merit. We find no abuse of discretion by the jury in finding that Mrs. Randall suffered damages under the Louisiana NHRBR, nor do we find any error in the jury's failure to reduce Plaintiff's award by two-thirds based on the number of beneficiaries in the class that can recover for Mrs. Randall's damages. We find that the jury's award of $150,000.00 to Plaintiff for his virile share of Mrs. Randall's damages was abusively high and reduce that award to $100,000.00. We also affirm

---

[3] See *Davis*, 928 So.2d 549, *writ denied*, 06-604 (La. 5/26/06), 930 So.2d 25; *Furlow v. Woodlawn Manor, Inc.*, 39,485 (La.App. 2 Cir. 4/20/05), 900 So.2d 336, *writ denied*, 05-1320 (La. 12/9/05), 916 So.2d 1064.

the trial court's allowance for Plaintiff to recover money damages from Camelot despite our Legislature's August 15, 2003, amendment to La.R.S. 40:2010.9 based upon the continuing tort doctrine. Finally, we award Plaintiff $5,000 in additional attorney's fees for all work performed on this appeal. All costs of this appeal are assessed to Camelot.

**AFFIRMED AS AMENDED.**